**In the Matter of CLOVER DONUT OF WHITE PLAINS CORP., Debtor.**

**Bankruptcy No. 81 B 20402.
No. 81 Adv. 6097.**

United States Bankruptcy Court,
S. D. New York.

Sept. 28, 1981.

---

**3.** *See In re Anderson*, 9 B.R. 248 (E.D.Pa.1981).    **4.** *See In re DiBona*, 7 B.R. 798 (E.D.Pa.1980).

Sidney Turner, White Plains, N. Y., Trustee.

Stephen J. Lehrman, White Plains, N. Y., for landlord.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The trustee in bankruptcy in this case believes he is the victim of a twice told tale. The debtor's landlord received from a new tenant of the business premises the sum of $3,000 for the right to use the debtor's fixtures and equipment in the new business. The trustee attempted to sell the same fixtures and equipment to the new tenant and ultimately entered into a settlement at a figure which the trustee believes is disappointingly low because the new tenant was not as generous as the trustee had hoped in negotiating for the fixtures and equipment a second time. Believing that he lost the benefit of a greater bargain the trustee seeks to recover from the landlord for his alleged damages, including a claim for conversion of the fixtures and equipment. The landlord then moved for summary judgment.

## UNDISPUTED FACTS

1. On July 2, 1981, Clover Donut of White Plains Corp., petitioned for relief under Chapter 7 of the Bankruptcy Reform Act of 1978. Accordingly, this court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1471.

2. The defendant, C.M.C. Co., is a partnership with a place of business in White Plains, New York, and is the landlord of premises previously occupied by the debtor located at 238 Main Street, White Plains, New York. The debtor's lease was terminated by the issuance of a notice of eviction that was served prior to the filing of the petition for relief under the Bankruptcy Code.

3. When the debtor filed its petition for relief on July 2, 1981, it owned certain trade fixtures and equipment, which remained on the premises at 238 Main Street, White Plains, New York, including refrigerators, storage bins, toasters, coffee machines, floor counters, stools, coffee mugs, cash registers, donut racks, an ice machine, an air conditioner, a dishwasher, and a gas-heater.

4. On July 16, 1981, the landlord, C.M.C. Co., entered into a lease with a new tenant, one Jerry Neijman, doing business as the Donut Nook, whereby the new tenant occupied the premises in question and took possession of the fixtures and equipment left there by the debtor. The landlord was then aware that the debtor's trustee in bankruptcy claimed an interest in the fixtures and equipment.

5. The July 16, 1981 lease between the landlord and the new tenant, Jerry Neijman, dealt with the debtor's fixtures and equipment as follows:

"48. Tenant shall pay to Landlord the sum of $3,000.00 for the use of fixtures and equipment on the premises. Landlord makes no representations as to ownership of all items remaining on the premises, and Landlord retains the right to keep said $3,000.00 regardless of the ultimate disposition of said items. Landlord hereby releases any right or claim that he may have to, or in, said fixtures and equipment. Payment shall be made by tenant in monthly installments of $500, payable commencing 1 month from the commencement of the lease."

6. On July 22, 1981, the trustee filed a complaint against the landlord, C.M.C. Co. and Jerry Neijman, the new tenant, "for an order directing the defendants to pay the plaintiff the sum of $20,000 representing the value of the assets appropriated by the defendants for their own use and benefit."

7. Thereafter, the trustee entered into a stipulation of settlement with respect to this action with the new tenant, Jerry Neijman.

8. The landlord, C.M.C. Co., served an answer dated August 21, 1981, denying the charge of appropriation of the debtor's assets and asserting as an affirmative defense that C.M.C. Co. "is ready, willing and able to turn over any and all property belonging to the debtor to the Trustee at any time demanded by the Trustee."

9. On September 10, 1981, the landlord moved for summary judgment on various grounds, including the assertion that the court does not have jurisdiction of the defendant, C.M.C. Co., because the defendant was not properly served with process and also that the complaint fails to state a cause of action.

## DISCUSSION

The landlord's motion for summary judgment on the ground that the court lacks jurisdiction over its person may be summarily disposed of by reference to Rule 12(h) of the Federal Rules of Civil Procedure, which is adopted by Bankruptcy Rule 712(b), and provides that the defense of lack of jurisdiction over the person is waived if not included in a pre-answer motion or in a responsive pleading. In the words of the late Judge Learned Hand, "the defendant in the case at bar waived that defense, when it filed its answer . . . without raising the point, Rule 12(h)." *Drabik v. Murphy*, 246 F.2d 408 at 409 (2d Cir. 1957). See also *Rauch v. Day & Night Mfg. Co.*, 576 F.2d 697 (6 Cir. 1978); *Zelson v. Thomforde*, 412 F.2d 56 (3 Cir. 1969).

■ The landlord's affirmative defense is equally without merit. It ill behooves the landlord to now say that it is "ready, willing and able to turn over any and all property belonging to the debtor to the Trustee at any time demanded by the Trustee." Having received $3000 from the new tenant for the use of the fixtures and equipment on the premises, the landlord has, by its own conduct, impaired its ability to turn over the property which is now in the new tenant's possession at the business premises. That this affirmative defense is baseless is further demonstrated by the fact that the new tenant already settled with the trustee with respect to the property in question. The landlord cannot now turn over the property to the trustee over the objections of the new tenant.

■ The landlord's request for summary judgment on the ground that the trustee's complaint fails to state a cause of action has more substance than the other points advanced by the landlord. Summary judgment is a drastic remedy, since it cuts off a party's right to present his case and, therefore, is available only under limited circumstances. In deciding a motion for summary judgment the court does not try issues of fact; " . . . it can only determine whether there are issues to be tried" and in so doing must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1320 (2d Cir. 1975). The moving party has the burden of demonstrating the absence of any material factual issue genuinely in dispute. *Heyman v. Commerce and Industry Co.,* supra. Rule 56 of the Federal Rules of Civil Procedure, which authorizes summary judgment in appropriate cases, is made applicable in adversary proceedings in bankruptcy cases by Bankruptcy Rule 756. The rule permits a party to pierce allegations of fact in the pleadings and to obtain relief by summary judgment where facts set forth in detail in affidavits, admissions, and materials extraneous to the pleadings show that there is no genuine issue of material fact to be tried.

■ In this case the undisputed facts reveal that upon the termination of the debtor's lease, and after the filing of the petition for relief under Chapter 7 of the Bankruptcy Code, the debtor's former landlord negotiated with a new tenant for the use of the premises previously occupied by the debtor. Notwithstanding that the landlord knew that the trustee in bankruptcy asserted rights in the debtor's fixtures and equipment that were left behind on the premises, the landlord charged the new tenant $3000 "for the use of the fixtures and equipment on the premises" and released "any right or claim that he may have to, or in, said fixtures and equipment." There is no evidence that when the landlord negotiated with the new tenant the landlord claimed that the debtor, as the former tenant, had lost any right of removal regarding the trade fixtures. Indeed, it is the general rule in New York that even in the absence of an agreement establishing a tenant's right of removal, a tenant may remove trade fixtures where removal can be accomplished without substantial injury to the freehold. *Re New York (North River Waterfront)* 192 N.Y. 295, 84 N.E. 1105, but such right must be exercised during or at the expiration of the term of the lease. *Webber v. Franklin Brewing Co.,* 123 A.D. 465, 108 N.Y.S. 251, aff'd 198 N.Y. 509, 92 N.E. 1106; *Matter of City of New York (Allen St.),* 256 N.Y. 236, 176 N.E. 377.

■ Contrary to asserting any interest in the debtor's fixtures and equipment, the landlord expressed in the written authorization of use and release of any right or claim that it made "no representations as to the ownership of all items remaining on the premises." Moreover, counsel for the landlord conceded at the argument on this motion that the landlord does not claim any interest in the fixtures and equipment in question. Hence, there is no issue of fact as to whether the debtor retained any removal right with respect to this property; all of the property in question is deemed removable for the purpose of this case.

That the landlord now concedes that it did not have any interest in the debtor's fixtures and equipment does not mean that the landlord and the new tenant were so certain of the landlord's rights when they negotiated the $3000 payment in the new lease with respect to the fixtures and equipment. Although all of the fixtures and equipment may have been removable, the new tenant was nevertheless willing to pay the landlord $3000 for the landlord's assurance that the new tenant could use the property secure in the knowledge that the landlord "releases any right or claim that he may have, to, or in, said fixtures and equipment." The new tenant did not pay for, or receive, a right to use the property superior to the interests of the trustee in bankruptcy or any parties other than the landlord. This was made clear by the landlord's disclaimer that the "Landlord makes no representations as to the ownership of all items on the premises." It does not follow that merely because the new tenant made a $3000 settlement with the landlord regarding the fixtures and equipment located on the premises, that the trustee lost the benefit of that money. This consideration was paid for whatever claim the landlord might have, if any, with respect to the fixtures and equipment and belonged to the landlord. The trustee's right to collect for the use of the debtor's fixtures and equipment was neither impaired nor diminished simply because the new tenant desired to make peace with the landlord of the premises where the property was located.

There is no question that under Code § 363 the trustee has the right to use, lease or sell property of the estate. Moreover, Code § 541(a)(1) broadly defines the scope of property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." Hence, the debtor's fixtures and equipment located on the premises when the debtor filed its Chapter 7 petition on July 2, 1981, constituted property of the estate within the meaning of Code § 541 and could be used, sold or leased by the trustee under the authority of Code § 363. The landlord's receipt of $3000 from the new tenant after the filing of the debtor's Chapter 7 petition in no way adversely affected the trustee's interests in the property of the estate. Moreover, the landlord's conduct did not violate any of the provisions of the automatic stay under Code § 362. The only subsection that might be invoked is subsection (3) of Code § 362(a) which forbids "any act to obtain possession of property of the estate or of property from the estate." The landlord expressly disclaimed any right to the debtor's fixtures and equipment. The $3000 which the landlord received from the new tenant for the disclaimer did not belong to the estate nor did such payment diminish the estate. Whatever rights the trustee had before the landlord negotiated with the new tenant were not affected by the execution of the new lease and were assertable after its execution.

The trustee's complaint bottomed on a misappropriation or conversion by the landlord fails to assert an essential element, namely that the landlord's alleged unauthorized conduct with respect to the debtor's fixtures and equipment was in defiance of, or to the exclusion of the trustee's rights. Although no manual taking of the property or application of it to the defendant's use is required, the defendant must have exercised dominion over the property to the exclusion of, and in defiance of, the owner's right. *General Electric Co. v. American Isbrandtsen Lines, Inc.*, 327 N.Y. S.2d 93, 37 A.D.2d 959. The essence of the tort of conversion is the exclusion of the plaintiff's rights. *Aetna Casualty & Surety Co. v. Glass*, 428 N.Y.S.2d 246, 75 A.D.2d 786. In this case the landlord concedes that the trustee is entitled to the debtor's fixtures and equipment and at no time asserted any claim in defiance of the trustee's rights.

■ Accordingly, the landlord did not convert or misappropriate either the $3000 it received from the new tenant or the debtor's fixtures and equipment remaining on the premises when the Chapter 7 petition was filed. The trustee was free to proceed against the new tenant, as he did,

and work out any settlement with regard to the trustee's rights in the property. That the new tenant had to pay twice sufficiently demonstrates that the trustee's rights were unaffected by the new lease. Although the new tenant paid the $3000 to the landlord at its own risk and was required to pay a second time for the use of the debtor's fixtures and equipment, the trustee may not now collect twice for the same property. Having settled his valid claim against the new tenant, the trustee should not now be permitted to collect again from the landlord on the speculation that the new tenant may have settled with the trustee for less than might have been the amount had he not paid $3000 to the landlord.

The trustee's complaint also makes reference to Code § 548, which deals with fraudulent transfers. This section is patently inapplicable to this case for any one of several reasons.

In order for the trustee to avoid a fraudulent transfer within one year before the filing of the petition there must be a "... transfer of an interest of the debtor in property ... if the debtor—(1) made such transfer ... (with actual or constructive intent to hinder, delay or defraud creditors)." Code § 548(a). A "transfer" is defined in Code § 101(40) to mean:

> "... every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of *disposing of or parting with property* or an interest in property, including retention of title as a security interest." [Emphasis added]

In this case the defendant landlord did not dispose of or part with any property; it simply released any interest it might have had in the fixtures and equipment after it disclaimed any representation as to ownership. More importantly, there was no disposing of or parting with "an interest of the debtor in property." The landlord merely released to the new tenant only whatever claim it might have had in the fixtures and equipment; it did not purport to transfer any interest *of the debtor* in the property. The trustee was free to assert against the

new tenant, as he did, whatever interest the debtor had in the property when the Chapter 7 petition was filed. Additionally, and most significantly, *the debtor* must have made the proscribed transfer, either directly or indirectly. Any transfer that the landlord might have made with respect to the debtor's fixtures and equipment *after* the filing of the Chapter 7 petition cannot under any stretch of the imagination be attributed to the debtor for the purpose of establishing a voidable fraudulent transfer under Code § 548.

It should also be observed that the trustee's complaint is pitched to a transaction that occurred after the commencement of the bankruptcy case. Postpetition transactions are governed by Code § 549, which provides in general that the trustee may avoid a transfer of property of the estate that occurs after the commencement of the case. However, as previously noted, this court rules that the landlord defendant did not transfer any property of the estate. Moreover, the entity held liable for any voidable transfers is the initial transferee or any immediate or mediate transferee of such initial transferee, as described in Code § 550. Thus, Code § 550 does not place any liability on the transferor to the extent that a transfer is avoided under Code §§ 544, 545, 547, 548, 549 or 724(a).

Not having received any briefs from either side, an extended discussion of all potentially applicable weapons in the trustee's arsenal was necessary in order to be certain in this case that the trustee exhausted his ammunition against the new tenant and is only shooting blanks in this twice told tale.

The landlord's motion for summary judgment must be granted because the trustee's complaint fails to state a claim for which relief may be granted. The complaint is hereby dismissed.

IT IS SO ORDERED.