391 So.2d 224 (1980)
BEAVER CRANE SERVICE, INC., Appellant,
v.
NATIONAL SURETY CORPORATION, Pittman Insurance Agency, Inc., and William Pittman, Chesapeake Adjustors, Inc. and William Kotaska and Markel Service, Inc., Appellees.
No. 79-2221.
District Court of Appeal of Florida, Third District.
November 18, 1980.
Rehearing Denied January 9, 1981.
*225 Montgomery, Lytal, Reiter, Denney & Searcy and Charles C. Powers, West Palm Beach, for appellant.
Fowler, White, Burnett, Hurley, Banick & Strickroot and Michael Murphy and Thomas F. Martin, Miami, Walsh, Theissen & Boyd and Mark R. Boyd and Alan V. Hanson, Ft. Lauderdale, David L. Willing and Karel H. Baarslag, McDonald & McDonald and J.A. Dillian, Miami, for appellees.
Before HUBBART, C.J., and BARKDULL and DANIEL S. PEARSON, JJ.
HUBBART, Chief Judge.
The central question presented for review by this appeal is whether insurance proceeds due and payable under an insurance policy for accidental damage to an insured chattel [which is the subject of a security agreement and the collateral for a loan] are payable to the secured party under the security agreement. We hold that such proceeds are so payable to the above secured party to the extent of its secured interest under Section 679.306(1), (2), Florida Statutes (1975). As the subject insurance proceeds were properly paid by the insurer to the secured party in the instant case, we affirm the final summary judgment entered below.

I
The facts of this case as they pertain to the issue on appeal are somewhat complex. The plaintiff Beaver Crane Service, Inc. purchased a certain mechanical grove crane for its business and financed the purchase thereof through Associates Commercial Corporation. The plaintiff executed a promissory note and a security agreement to Associates pledging the grove crane as collateral therefor. Under the security agreement, Associates was given a security interest in the crane with the right at its option to take possession of same without notice or demand upon the plaintiff's failure to make timely payments required under the promissory note. The security agreement further required the plaintiff to provide insurance coverage on the subject grove crane for the benefit of the secured party in a sum not less than the amount secured. Finally, the security agreement specifically adopted the applicable sections of the Uniform Commercial Code with respect to the disposition of proceeds on the *226 subject collateral. A duly executed financing statement was subsequently filed with the Secretary of State in order to protect the interest of the secured party Associates in both the collateral grove crane and the proceeds of the collateral.
The plaintiff, in compliance with the above security agreement, obtained an insurance policy on the subject crane from the defendant National Surety Corporation. Defendants Pittman Insurance Agency and William Pittman, as agent, were the insurance brokers which procured the insurance coverage requested by the plaintiff; the defendant Markel Service, Inc. was the insurance broker who issued the insurance policy for the defendant National Surety.
The subject insurance policy contained the following relevant provisions as to the party or parties to be paid in case of an insured loss:
"Loss Payable Clause: Loss if any to be adjusted only with the insured and payable to the insured and Associates Commercial Corporation, P.O. Box 8428, Ft. Lauderdale, Florida. See endorsement."
The endorsement referred to in the above provision, in turn, provided in relevant part as follows:
"Loss or damage, if any, under the policy shall be payable as interest may appear to Associates Commercial Corp., P.O. Box 8428, Ft. Lauderdale, Florida, 33310."
"Whenever a payment of any nature becomes due under the policy, separate payment may be made to each party at interest provided the Company protects the equity of all parties."[1]

A
On June 1, 1976, the insured crane sustained accidental damage during the course of operation while in the possession of the plaintiff. The plaintiff notified and filed a claim with the defendant National Surety Corporation for the damage loss sustained to the crane in the accident. The lienor Associates made no claim under the subject policy at this time. The defendant National Surety through its agent and adjusters, the defendant Chesapeake Adjusters, Inc. and William Kotaska, proceeded to adjust the claim. The plaintiff took the crane to the defendant Florida Equipment Company for repairs. The defendant Florida Equipment Company, in turn, repaired the crane and submitted a bill for $56,397.85.
On August 16, 1976, the defendant National Surety wrote a letter to the plaintiff and refused to pay the claim on the ground that the insured crane utilized a boom which exceeded 40 feet in length and was allegedly excluded from coverage under paragraph five of the subject insurance policy.[2] The defendant Florida Equipment, in turn, refused to return the crane to the plaintiff for failure to pay the submitted bill, and eventually converted the crane by selling it to a third party without the consent of the plaintiff.

B
On June 1, 1976, at the time of the aforementioned accident, the plaintiff was six days late on an installment payment to Associates under the promissory note. On June 2, 1976, Associates sent a letter to the plaintiff stating that its May 25, 1976, payment was overdue, that delinquent charges *227 were being assessed against the plaintiff and that immediate remission of the overdue installment plus delinquent charges was required. The letter further stated, "If you cannot forward these funds, please contact us and we will attempt to work with you on arrangements for payment." The plaintiff, however, made no further payments on the note claiming that the defendant National Surety's refusal to pay the claim and the defendant Florida Equipment's sale of the crane caused it to lose certain revenues and eventually go out of business. As a result, the plaintiff defaulted on the loan to Associates, and, on July 12, 1977, a judgment of $90,552.93 was entered against the plaintiff and in favor of Associates in the Circuit Court for the Eleventh Judicial Circuit of Florida.

C
On May 17, 1977, the lienor Associates belatedly asserted its rights under the subject insurance policy by bringing action in the Circuit Court for the Eleventh Judicial Circuit of Florida against the defendant National Surety, averring that it was entitled, under the above policy, to payment on the claim involving the damaged insured crane.[3] On November 6, 1978, the defendant National Surety settled with Associates on the lawsuit, paid an undisclosed sum to Associates under the subject insurance policy, and the lawsuit in question was dismissed by the court. It plainly appears from the record that the secured interest of Associates in the crane at the time of the subject accident far exceeded the damage loss to the crane.[4]

D
On October 28, 1977, the plaintiff brought suit against the defendant National Surety in the Circuit Court for the Eleventh Judicial Circuit of Florida for breach of the subject insurance policy based on the failure to pay the plaintiff on the claim involving the damaged crane. Suit was also brought against the defendants Chesapeake Adjustors and William Kotaska for certain misrepresentations allegedly made that the claim in question would be paid to the plaintiff. Suit was further brought against the defendants Pittman Insurance Agency and William Pittman for failure to procure insurance covering the subject accident as requested by the plaintiff. Finally, the plaintiff also sued the defendants Florida Equipment Company and J.T. Vernon, as its agent, for converting the subject insured crane by selling same without the consent of the plaintiff.
Based on the above record, the trial court entered a partial summary judgment on liability for the plaintiff against the defendants Florida Equipment Company and J.T. Vernon on the conversion claims; no appeal has been taken from this ruling. The trial court also entered a final summary judgment for the defendant National Surety as well as the other defendants in this cause; the plaintiff has taken a timely appeal from this final summary judgment.

II
The controlling statutory authority in this case is Section 679.306, Florida Statutes (1975) which provides as follows:
(1) "`Proceeds' includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of. The term also includes the account arising when the right to payment is earned under a contract right. Money, checks and the like are `cash proceeds.' All other proceeds are `noncash proceeds.'
(2) Except where this chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."
It has been held, based on the above statute, that insurance proceeds due and payable *228 under an insurance policy for loss or damage, including theft or destruction, to an insured chattel [which is the subject of a security agreement and the collateral for a loan] is payable to the secured party to the extent of its secured interest under the security agreement. Kahn v. Capital Bank, 384 So.2d 976 (Fla. 3d DCA 1980); Insurance Management Corp. v. Cable Services of Florida, Inc., 359 So.2d 572 (Fla. 2d DCA 1978); see Paskow v. Calvert Fire Insurance Co., 579 F.2d 949 (5th Cir.1978); PPG Industries, Inc. v. Hartford Fire Insurance Co., 531 F.2d 58 (2d Cir.1976). Indeed, this case law has since been expressly codified by amendment to the above statute. Kahn v. Capital Bank, 384 So.2d at 977 n. 2; § 679.306(1), Fla. Stat. (1979).

III
In the instant case, the subject insurance policy by endorsement makes the secured party Associates the loss payee under the policy only to the extent "as interest may appear." In our view, Associates' interest in the subject insurance proceeds clearly appears in this case by virtue of the security agreement and applicable UCC law stated above. The security agreement makes Associates the secured party on the collateralized, insured crane, and, indeed, requires the plaintiff to take out insurance in order to properly protect the interest of Associates in the crane. The security agreement further adopts the applicable provisions of the UCC with reference to proceeds on the collateral. Under the applicable UCC law, as stated above, the secured party Associates was entitled to the proceeds on the insurance policy upon the damage loss sustained to the crane on June 1, 1976 to the extent of its secured interest. Its secured interest in the crane at the time of the subject accident greatly exceeded the damage loss sustained, and, accordingly, Associates as the secured party was entitled to, and properly received, the entire insurance payout in this case.
The plaintiff strenuously argues, and we agree, that it was in lawful possession of the insured crane at the time of the damage to the crane on June 1, 1976. We do not believe, however, that such lawful possession entitles the plaintiff to the insurance proceeds herein. The entitlement to insurance proceeds upon the loss or damage to collateral which is the subject of a security agreement does not turn on lawful possession or title under the UCC. It turns on whether the secured party, as here, has an interest, by virtue of said security agreement, in the subject collateral. Associates demonstrated such an interest in this cause, and, therefore, properly received the full insurance payout herein; the plaintiff is not entitled, as correctly ruled by the trial court, to any of these proceeds.
At the oral argument in this cause, the plaintiff conceded, and we agree, that its claims against the defendants Chesapeake Adjusters, William Kotaska, Pittman Insurance Agency and William Pittman must necessarily fall if its claim against the defendant National Surety falls. As we have concluded that the plaintiff has no claim against the defendant National Surety herein, it follows that it has no claims against the above remaining defendants either. The final summary judgment entered in favor of all the above defendants is, accordingly,
Affirmed.
NOTES
[1] It is a matter of some dispute whether this endorsement was before the trial court at the time of the motion for summary judgment. It was clearly argued by both parties at the hearing on the motion for summary judgment. Our review of the record reveals that the endorsement does appear in the record at pages 13 and 1445 and was, in view of all the circumstances, properly before the trial court at the time of the motion for summary judgment. Indeed, no one on this appeal contests either the existence or accuracy of the above endorsement to the policy or that the endorsement formed, in part, the basis for the trial court's ruling herein.
[2] The defendant National Surety subsequently abandoned this position when it settled on the submitted claim with Associates Commercial Corporation, the lienholder on the insured crane. In any event, National Surety was correct, albeit for the wrong reason, in refusing to pay the plaintiff Beaver Crane under the subject policy because, as will be seen, the lienor Associates was entitled to the total payout under the said policy.
[3] From this record, it is apparent that no claim was submitted by Associates for the conversion of the insured crane.
[4] We reject the plaintiff's contention that the record discloses a genuine issue of fact on this subject.