In the Matter of ARMANDO GERSTEL, INC., Debtor.

EFRAIM ROSEN, INC., a corporation, Plaintiff,

v.

Jeanette E. TAVORMINA, etc., et al., Defendants.

GOODHART, ROSNER & GREEN, P.A., a Florida professional association, Counterclaimant/Crossclaimant,

v.

EFRAIM ROSEN, INC., Plaintiff,

and

Jeanette E. Tavormina, etc., et al., Defendants/Crossdefendants, and Additional Parties/Crossdefendants.

Bankruptcy No. 83–02044–BKC–JAG. Adv. Nos. 84–0231–BKC–JAG–A, 84–0217–BKC–JAG–A and 84–0231–BKC–JAG–A.

United States Bankruptcy Court, S.D. Florida.

Oct. 24, 1984.

---

Irving M. Wolff, Holland & Knight, Miami, Fla., for Goodhart.

Robert G. Hewitt, Harper & Hewitt, Miami, Fla., for Tavormina, trustee.

Britton, Cohen, Cassel, Kaufman & Schantz, P.A., Miami, Fla., for Efraim Rosen, Nachman Rosen, American Credit Indem. and Ba-Bar Diamond Co.

Jerry M. Markowitz, Miami, Fla., for Herris.

Maurice Rosen, N. Miami, Fla., for Public Ins. Consultants.

Hauser & Metsch, Miami, Fla., for Aquatic Co.

Richard Phillips, Schatzman & Schatzman, Coral Gables, Fla., for Evvco Enterprises, Inc.

Angelo Ali, Miami, Fla., for Lillian Kaufman and Bueche Girod Corp.

Phillips & Phillips, P.A., Paul S. Berger, Miami, Fla., for Florence R. Semet.

Tralins & Potash, N. Miami, Fla., for Michael Landy.

Billy Tarnove, Fort Lauderdale, Fla., for Irving Halpern.

Armando Oliveros, Jr., Miami, Fla., for Fausto Villar.

Lawrence Fuller, David Rosner, pro se.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOSEPH A. GASSEN, Bankruptcy Judge.

The above adversary proceedings involve numerous questions of fact and law regarding the amount, validity and priority of various claims to $1,500,000 plus accrued interest constituting the proceeds of settlement of a pre-bankruptcy lawsuit by the debtor against Jewelers Mutual Insurance Company ("Jewelers"). They were tried together on July 11, and 12, 1984 and have been effectively consolidated pursuant to Bankruptcy Rule 7042. Because of the effective consolidation and inseparability of the claims, these adversary proceedings are being formally consolidated by separate order, these Findings of Fact and Conclusions of Law are applicable to both adversary proceedings as so consolidated, and a single judgment is being entered separately hereupon.

The facts are not substantially disputed. On July 23, 1981 the jewelry business of the debtor, Armando Gerstel, Inc. ("Gerstel") was robbed by an armed assailant. The following day Gerstel hired the law firm of Goodhart, Rosner & Green, P.A. (formerly Goodhart & Rosner, P.A., "Goodhart"), Irving Herris, who is both an attorney and a certified public accounting service for the debtor ("Herris"), and Public Insurance Consultants, Inc., a public insurance adjusting firm ("Adjustors"). All three performed services in connection with Gerstel's claim for the robbery loss under its insurance policy with Jewelers and the police investigation of the robbery.

After a few weeks of preparation of the proof of loss, a claim was made with Jewelers for about $2,100,000.00, constituting the policy limits less the deductible. Jewelers denied Gerstel's claim on grounds that there was a material misrepresentation in the insurance application, that there was no actual robbery, and that the claim was excessive, so in October 1981 Goodhart filed suit for the debtor against Jewelers and its insurance agent, Michael Wexler ("Wexler"), seeking the policy limits, additional damages for essentially business interruption and bad faith, and statutory attorneys' fees under section 627.428, Florida Statutes.

In June 1983 as trial approached, Gerstel agreed to settle with Jewelers and Wexler for a combined amount of $1,500,000.00.

The state court approved the settlement on June 23, 1983, but because of various third party claims to the settlement proceeds, which claims form the substance of these adversary proceedings, the proceeds were placed in an escrow agreement under the state court's order and supervision.

On November 9, 1983, before any of the claims against the proceeds could be finally resolved by the state court, Gerstel commenced this case under Chapter 7 of the Bankruptcy Code. Jeanette E. Tavormina was appointed trustee ("trustee"), and on February 9, 1984 this Court directed that the settlement proceeds be delivered to the trustee, with all liens and claims against the proceeds to attach to the funds so transferred. These adversary proceedings require the determination of the amount, validity and priority of the various claims.

As to amount, none of the claims seems seriously disputed. Although some question was raised regarding the outstanding amount of the claim of Aquatic Company, N.V. ("Aquatic"), testimony at trial resolved to the satisfaction of the Court that the $200,000.00 sought under an assignment is unpaid and accordingly valid in amount.

As to validity and priority of the various claims, the resolution is not so simple. Myriad pleadings and arguments have been raised by the various parties. The Court has carefully considered each. Some require little or no discussion, but those that the Court finds require substantive treatment will be dealt with hereinafter in the context of each claim or type of claim.

### The Goodhart Charging Lien

The foremost claim to be dealt with is that of Goodhart for an attorneys' charging lien. Goodhart commenced services for Gerstel on July 24, 1981, the day after the robbery, pursuant to a contingent fee contract calling for a fee of forty percent of any recovery. Once the claim was denied, the parties proceeded through the state court litigation based upon that contract. Accordingly the Court finds that the agree-

ment was valid and enforceable according to its terms.

■ Unsurprisingly in view of the fact those terms result in a total fee of $600,-000.00 based upon the $1,500,000.00 recovery, Goodhart's charging lien claim has been subjected to every conceivable kind of attack by the other claimants. Few of them merit serious discussion, and the Court does not find that Goodhart's conduct in representing the debtor against certain of the other claimants gives rise to any estoppel or equitable subordination. On the contrary, but for those services there may never have been a fund for the claimants to litigate over now. Rather than any conduct of counsel, the Court regards certain legal arguments as raising the principal issues concerning the Goodhart charging lien.

The first issue is the validity and effect of the lien itself. As to this issue, the Court finds the law clear and dispositive. The law to be applied is that of the State of Florida. *In re Diplomat Electric, Inc.*, 499 F.2d 342 (5th Cir.1974); *United States v. Transocean Air Lines, Inc.*, 356 F.2d 702 (5th Cir.1966). This Court has applied Florida law in similar circumstances in the past. *In re Hanson Dredging, Inc.*, 15 B.R. 79 (Bkrtcy.S.D.Fla.1981).

■ Under Florida law, an express or implied contract that an attorney is to be paid out of recovery through prosecution of the client's claim creates an equitable lien upon the judgment and its proceeds. *United States v. Transocean Air Lines, Inc.*, *supra* at 705; *In re Hanson Dredging, Inc.*, *supra* at 82. Such equitable liens developed in order to avoid legal proceedings to collect the fee and to protect the confidential nature of the attorney-client relationship. *See Worley v. Phillips*, 264 So.2d 42 (Fla. 2d DCA 1972). *See also Sinclair, Louis, etc. v. Baucom*, 428 So.2d 1383 (Fla.1983).

■ Because the lien is based upon the common law rather than statute, the only apparent requirement to perfect the lien is timely notice. *Sinclair, Louis, etc. v. Bau-*

*com, Id.* at 1385. Some claimants have argued that although Goodhart commenced the representation on July 24, 1981 pursuant to a written agreement that same date which expressly provided for a charging lien, because a written attorneys' charging lien was not actually filed of record in the state court proceedings until August 5, 1983, after approval of the settlement, it was not timely.

■ The Court disagrees. In the first place, under Florida law notice may be implied from public records which should lead a prudent man to inquire as to the extent of the attorneys' lien. *Randall v. Archer*, 5 Fla. 438, 444 (1854). Goodhart's filing of suit provided such notice in October 1981 at the latest. Further, virtually every claimant dealt with Goodhart as the debtor's attorney in some manner or another, thus providing them with actual notice of the representation. There is no suggestion that anyone was misled by any lack of actual knowledge, although indeed most if not all had such actual knowledge.

■ Regardless, the notice provision is concerned essentially with the time at which the lien is perfected and thus attaches to the fruits of the judgment. That can occur under Florida law at any time during the period that the funds and the parties are under the court's jurisdiction and control. *Winn v. City of Cocoa*, 75 So.2d 909 (Fla.1954); *Scott v. Kirtley*, 113 Fla. 637, 152 So. 721 (1933). *See Webster v. Sweat*, 65 F.2d 109 (5th Cir.1933). Once the lien *attaches*, however, it relates back in time and takes effect from the date of the attorney's first commencement of services. *Matter of TLC of Lake Wales, Inc.*, 13 B.R. 593, 595 (Bkrptcy M.D.Fla.1981); *Miles v. Katz*, 405 So.2d 750, 752 (Fla. 4th DCA 1981).

■ Accordingly, the Court finds that there was ample notice of the Goodhart lien, actual and constructive, but that in any event the written filing of the claim of lien while the property was in custody of the state court was timely. The Goodhart charging lien attached and relates back to the commencement of services on July 24, 1981. Because no one claims a lien which could have attached prior to that date, Goodhart's attorneys' charging lien is in a first priority position.

■ The final issue as to the Goodhart lien is whether it is enforceable according to its terms, with the right to the agreed fee having vested, or whether this Court should now review the amount. As to this, there is an apparent split of authority. In *Matter of TLC of Lake Wales, Inc., supra* at 596, the Court assumed without citation of precedent the authority to determine the reasonableness of the fee, whereas in *In re Beverly Mfg. Corp.*, 29 B.R. 513 (Bkrptcy S.D.Fla.1983), Judge Britton of this Court expressly disagreed. This Court finds Judge Britton's view and his authority, *Matter of Innkeepers of New Castle, Inc.*, 671 F.2d 221 (7th Cir.1982), to be persuasive on this point. The attorneys' charging lien is contractual in nature and is to be based upon the amount agreed with the client, not an amount to be determined by the trial court. *In re Hanson Dredging, Inc., supra* at 83; *cf. Alyea v. Hampton*, 112 Fla. 61, 150 So. 242 (1933).

■ In the instant case Goodhart's fee contract was fully executed, the contingency had occurred, and the percentage fee had vested. Bankruptcy did not invalidate the lien. *In re Beverly Mfg. Corp., supra; Matter of TLC of Lake Wales, Inc., supra* at 595 (citations omitted). The fee contract was not unconscionable or otherwise unenforceable under Florida law. In fact, greater percentages have been upheld, *e.g., Matter of Innkeepers of New Castle, Inc., supra; In re Beverly Mfg. Corp., supra,* as has an identical fee under similar circumstances. *See Milton Kelner, P.A. v. 610 Lincoln Road, Inc.*, 328 So.2d 193 (Fla. 1976). Indeed, even in *Matter of TLC of Lake Wales, supra* at 596, where the court redetermined the fee, the fee as redetermined was forty percent.

### The Herris Charging Lien

■ Although the Goodhart charging lien is enforceable, the claim of Irving Her-

ris to a charging lien must be denied. Herris was employed by Gerstel shortly after the robbery and performed services for the debtor memorialized in a contract dated June 1, 1982 which called for a 5% contingent fee. Herris filed a charging lien in the state court action on August 8, 1983.

Herris testified that he performed legal rather than accounting services. Nonetheless, the record shows his services were performed more in the function of an accountant than a lawyer. His accounting firm had provided accounting services to Gerstel for years prior to the robbery. The services Herris provided in connection with the robbery were essentially of an accounting nature and lacked such indicia of legal services in connection with the lawsuit as could justify an attorney's charging lien herein.

The record does not establish that Herris referred the matter to Goodhart or that he had any responsibility for prosecution of the lawsuit. He was not consulted regarding settlement of the case. The fact that his contract with the debtor was on his attorney's stationery rather than his accounting stationery does not alter the conclusion that his function was as an accountant rather than as a lawyer handling or participating in the lawsuit as counsel of record. He simply did not have an enforceable attorneys' charging lien, and the absence of any assignment language in his contract, unlike Adjustors, leaves Herris with no enforceable right to the proceeds at all.

### The Adjustors Claim

■ Adjustors likewise claims a charging lien upon the settlement proceeds. Adjustors was retained on July 24, 1981, the day after the robbery, to help prepare the proof of loss, pursuant to a written agreement of that date, and on August 9, 1983 it filed a "Notice of Charging Lien" in the state court action. There is, however, no statutory nor common law authority for such a lien. Accordingly it is unenforceable.

■ All is not lost for Adjustors, however. Although the Court holds that its claimed lien was uneffectual, the agreement between Adjustors and Gerstel was nonetheless effective as an absolute assignment of a portion of Gerstel's claim against Jewelers.

### The Assignment Claims

■ As is true of Adjustors, a number of the claims herein are predicated upon assignments by Gerstel of amounts of money from its pending claim and lawsuit against Jewelers. These assignments were made to placate certain creditors whose claims were not able to be paid because of the loss suffered from the robbery. The Court finds that these assignments were absolute assignments of portions of Gerstel's claim against Jewelers and as such are enforceable because they were not subject to the filing requirements of the Uniform Commercial Code nor did they become property of the estate under 11 U.S.C. § 541. *See In re Moskowitz,* 14 B.R. 677 (Bankr.S.D.N.Y.1983).

Under section 679.104(7), Florida Statutes, the UCC does not apply to a transfer of an interest or claim under a policy of insurance, except as provided with respect to "proceeds" and "priorities in proceeds". The "proceeds" exception to the exclusion does not apply in the instant case because the insured property was not collateral as to which the insurance would substitute for and follow property covered by a security agreement. *Compare, Paskow v. Calvert Fire Ins. Co.,* 579 F.2d 949 (5th Cir.1978); *Beaver Crane Service, Inc. v. National Surety Corp.,* 391 So.2d 224 (Fla. 3d DCA 1980); *Kahn v. Capital Bank,* 384 So.2d 976 (Fla. 3d DCA 1980). In the instant case there was simply an assignment of an interest in an existing claim under the Jewelers policy, excluded from the UCC, as to which (like any other assignment) priorities are established according to notice to Jewelers. *See Boulevard Nat'l Bank of Miami v. Air Metal Industries, Inc.,* 176 So.2d 94 (Fla.1965); *Oper v. Air Control*

*Products, Inc. of Miami,* 174 So.2d 561 (Fla. 3d DCA 1965).

There were apparently seven assignments executed by the debtor. In the chronological order of the date of execution of the assignments these are: Adjustors (as noted above, for 10% of the recovery, or $150,000.00, on July 24, 1981); Irving Halpern, Inc. (for $200,000.00 on August 13, 1981); Florence R. Semet (for $187,025.00 on January 18, 1982); Fausto Villar (for $150,000.00 on May 13, 1982); Aquatic Company, N.V. (for $200,000.00 on August 20, 1982); Bueche Girod Corporation (for $170,000.00 on November 19, 1982); D'Esposito Brothers Jewelry, Inc. (for $7,831.29 on January 19, 1983); and the Estate of Charles Kaufman (for $60,000.00 on March 18, 1983). The total amount of these assignments is $1,124,856.20.

As to the dates of notice to Jewelers, the evidence is clear as to some of the assignees but not as to others. Adjustors is the earliest, with notice given on October 5, 1981 via a letter to the company adjusting the loss for Jewelers. Next is Halpern, which on August 25, 1982 moved to intervene in the lawsuit, followed by D'Esposito Brothers which served a notice of the assignment as a pleading in the lawsuit on January 19, 1983. Semet and Aquatic are next based upon interventions in the lawsuit on March 24, 1983 and March 30, 1983, respectively.

Villar, Bueche Girod and Kaufman, although they did establish notice to Jewelers during the pendency of the state court proceedings and prior to judgment, failed to prove the exact date. Although the date is not clear, Jewelers did have notice of the assignments prior to the filing of bankruptcy, so that the claim of the trustee is defeated. Accordingly, while they are entitled to enforce their assignments the Court holds that they are equal in priority, and to the extent funds remain to pay these assignments they will share pro rata. On a pro rata basis, Villar is entitled to $61,240.94, Bueche Girod to $69,406.39 and Kaufman to $24,496.38.

*The Efraim Rosen Garnishment*

The next claim against the settlement proceeds is that of Efraim Rosen, Inc. ("Rosen"), by virtue of a garnishment suit instituted against Jewelers. On November 19, 1982 Rosen obtained a judgment against Gerstel, and on January 18, 1983 Rosen obtained and subsequently served a writ of garnishment against Jewelers. Jewelers answered the garnishment by denying any indebtedness. Thereafter Jewelers settled Gerstel's suit against it by paying (along with $50,000.00 from Wexler) $1,450,000.00 into the state court created escrow. Before any judgment was entered in the garnishment writ, Gerstel filed in bankruptcy.

■ Generally, by a garnishment proceeding the garnishor [Rosen], who is a creditor of the primary debtor [Gerstel], sues a third party garnishee [Jewelers] seeking to use assets of the primary debtor to satisfy the garnishor's claim against the primary debtor. The garnishment statute applies to a "debt due" from the garnishee to the primary debtor or to "tangible or intangible property" of the primary debtor which is in the hands of the garnishee. *See* section 77.01, Florida Statutes.

In the instant case, Rosen urges that at the critical time (between service of the writ upon Jewelers and its answer) there was a "debt due" from Jewelers to Gerstel under the insurance policy. The trustee and other creditors argue that at that time there was only an unliquidated contract claim, itself the subject of another lawsuit, which cannot properly be garnished.

■ Under Florida law garnishment does not create an immediate lien in the garnishor's favor but rather is a statutory proceeding of an equitable nature by which the garnishor is subrogated to the primary debtor's right against the garnishee. *Pleasant Valley Farms v. Carl,* 90 Fla. 240, 106 So. 427 (1925). The garnishor gets no greater right than that of the primary debtor, *Reaves v. Domestic Finance Co.,* 113 Fla. 672, 152 So. 718 (1934), nor is the garnishee by service of the writ to be

placed in any worse condition than had the primary debtor brought suit upon the claim. *Reeves v. Don L. Tullis & Assoc., Inc.*, 305 So.2d 813, 816 (Fla. 1st DCA 1975). The garnishor merely steps into the primary debtor's shoes. *Coyle v. Pam American Bank of Miami*, 377 So.2d 213 (Fla. 3d DCA 1979). Judgment on the garnishment writ will create a lien, however, which relates back to service of the writ. *See Florida East Coast Railway v. Consolidated Engineering Co.*, 95 Fla. 99, 116 So. 19 (1928).

 Florida law requires that the obligation from the garnishee to the primary debtor, in order to be subjected to garnishment, not be contingent or uncertain. *Chaachou v. Kulhanjian*, 104 So.2d 23, (Fla.1958); *West Fla. Grocery Co. v. Teutonia Fire Ins. Co.*, 74 Fla. 220, 77 So. 209 (1918); *Tomlin v. Anderson*, 413 So.2d 79 (Fla. 5th DCA 1982). Nonetheless, there is authority that a noncontingent, fully performed contract obligation from the garnishee to the primary debtor may be sufficient if the contract amount can be so readily ascertained and reduced to writing that it is essentially liquidated in amount. *See Alabama Hotel Co. v. J.L. Mott Iron Works*, 86 Fla. 608, 98 So. 825 (1924).

 In the instant case, Rosen sought to garnish Gerstel's claim against Jewelers while it was the subject of an existing lawsuit. At the operative time, *i.e.*, between service of the writ of garnishment and Jeweler's answer, Gerstel's claim was being vigorously defended both as to liability and amount, making the claim both contingent and unliquidated.

 Rosen's alternative suggestion that the garnishment should be sustained to the extent of Jewelers' offer to refund premiums cannot be accepted, since even if the amount of the tendered refund is considered liquidated, it was contingent. Just as Jewelers was contesting its obligation to pay under the policy, Gerstel was rejecting such a refund. It was conceivable that the jury could find the policy was valid but there was no loss, thus avoiding any liability on the part of Jewelers. Therefore, even the "liquidated" refund tender was contingent and accordingly not properly a subject of garnishment.

Rejection of Rosen's attempt to garnish the unliquidated contract claim of Gerstel versus Jewelers is reinforced by *Florida Steel Corp. v. A.G. Spanos Enterprises, Inc.*, 332 So.2d 663 (Fla. 2d DCA 1976). In *Spanos* the court held that a judgment on an unliquidated claim, unlike a liquidated claim, could not be garnished even during a pending appeal, there being no enforceable debt until the judgment is final. If a *judgment* on an unliquidated claim cannot be the subject of a garnishment until it is final, *a fortiori* a claim not yet ripened into judgment cannot be garnished.

 Unfortunately, the procedure suggested in *Spanos* to preserve the garnishor's priority against subsequent garnishors—staying the garnishment proceedings until the appeal could be determined—cannot be utilized here. In *Spanos* there was an existing judgment and a supersedeas bond upon which the garnishor could collect if the appeal were affirmed. Here, Rosen did not seek to intervene and proceed in the same action against the potential judgment or settlement proceeds, which it could have done under Florida law. *See Leatherman v. Gimourginas*, 192 So.2d 301, 302 (Fla. 3d DCA 1966). Instead Rosen sued independently and eschewed intervention.

The difficulty with Rosen's having brought an independent garnishment action under the present circumstances is that when Gerstel and Jewelers agreed to a settlement pursuant to court approval, the settlement proceeds were placed in escrow. Those funds were *in custodia legis* under *Kusens v. Johannesburg*, 182 So.2d 468 (Fla. 3d DCA 1966). As such they could not be garnished. *Id.; see also Leatherman v. Gimourginas, supra.* Thus not only was there not a debt due Gerstel at the time of Rosen's garnishment, the chose in action being contingent and unliquidated, but also the funds ultimately resulting

from Gerstel's claim never became subject to garnishment.

### Other Claims

 Various other creditors have been joined as having judgments or other potentially secured claims against the settlement funds. The Court finds that none of them have established any priority over the attorneys' charging lien and assignments. Accordingly the claims of Michael Landy, Inc., Nachman Rosen, Inc., Ba-Bar Diamond Company, Inc., American Credit Indemnity Co. of N.Y., as Assignee, and Evvco Enterprises, Inc., are disallowed as secured claims or as having rights in the settlement proceeds superior to those of the trustee, whose rights also are inferior to the rights of Goodhart and the assignees. In view of the insufficiency of the settlement proceeds to pay even the charging lien and the assignments, however, these claims would appear to be moot. Lawrence A. Fuller, Esquire, and David Rosen, Esquire, the state court appointed escrow agents, have disclaimed any fee for their services as escrow agents, and for that reason have waived any claims to the settlement proceeds.

### Interest

 Under *Matter of Innkeepers of New Castle, Inc., supra,* 671 F.2d at 231, Goodhart and the assignees are entitled to interest upon their claims. Under section 687.01, Florida Statutes, the applicable rate is twelve percent. Ordinarily, interest on contractual claims commences to run at the time the debt becomes due. *Brooks v. School Board of Brevard County,* 419 So.2d 659 (Fla. 5th DCA 1982); *Bryan & Sons Corp. v. Klefstad,* 265 So.2d 382 (Fla. 4th DCA 1972). Because Goodhart's lien and the assignments were all payable out of the settlement proceeds, all became payable at the same time and insofar as their entitlement to interest is concerned are of equal dignity. Therefore Goodhart and each assignee is entitled to interest, pro rata, at the actual rate earned in the escrow fund up to twelve percent. In the event there is a surplus of interest earned over the statutory twelve percent rate,

such surplus shall be retained by the trustee as part of the estate.

Pursuant to Bankruptcy Rule 9021(a) a separate final judgment is being entered hereon.