**In re Alan MOSKOWITZ and Marlene Moskowitz, Debtors.**

Bankruptcy No. 81 B 20189.
Adv. No. 81 6071.

United States Bankruptcy Court,
S. D. New York.

Oct. 5, 1981.

Sidney Turner, White Plains, N. Y., trustee.

Kelley Drye & Warren, New York City, for New York Hospital; Robert A. Horowitz, New York City, of counsel.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

New York Hospital has moved for summary judgment against the trustee in bankruptcy in this case. The question presented is whether proceeds due under a medical insurance contract, remitted directly to a hospital for services rendered to the debtors, and paid within three months prior to the debtors' joint filing under 11 U.S.C. § 302, belong to the debtors as property of the estate within the meaning of U.S.C. § 541. The trustee in bankruptcy seeks recovery of the funds as a voidable preferential transfer pursuant to 11 U.S.C. § 547.

### FACTS

1. The trustee in bankruptcy commenced an adversary proceeding pursuant to Bankruptcy Rule 701 on May 21, 1981 to recover proceeds in the amount of $4350.00 as a voidable preferential transfer pursuant to Code § 547, paid by The Associated Hospital Service of New York [hereinafter "Blue Cross"] directly to The Society of New York Hospital ["New York Hospital"] under a Blue Cross medical insurance policy on behalf of the debtors in this case, within three months prior to the filing on March 28, 1981 of their joint petition under Code § 302.

2. By notice of motion dated June 22, 1981, New York Hospital moved to dismiss the trustee's complaint for legal insufficiency pursuant to Bankruptcy Rule 712. A hearing was held in this court on August 19, 1981. In the decision dated August 21, 1981, *In re Moskowitz*, 7 B.C.D. 1314, 13 B.R. 357 (S.D.N.Y.1981), this court denied New York Hospital's motion, holding that the complaint stated a facially good cause of action in claiming that the insurance policy proceeds New York Hospital received from Blue Cross were property of the estate as delineated under Code § 541 and that the payments made by Blue Cross on the debtors' behalf diminished the debtors' estate to the prejudice of the debtors' general creditors.

3. However, the court indicated that if evidence were to be submitted either at

trial or in connection with a motion for summary judgment supporting the defendant's claim that the debtors had previously assigned the insurance proceeds to New York Hospital, then any Blue Cross payments made on the debtors' behalf could be viewed as held by the debtors in a fiduciary capacity and under a constructive trust so as not to constitute property of the estate, thereby thwarting any claim of voidable preference.

4. New York Hospital filed an application with the United States District Court for the Southern District of New York for permission to appeal from this court's decision and order dated August 21, 1981. The application was denied by the District Court on September 22, 1981, in the following language:

"We agree with the Bankruptcy Judge that the issues raised by New York Hospital present disputed questions of fact which remain open in this case. These are best resolved at trial or in connection with a motion for summary judgment.

Due regard for judicial efficiency and material advancement of the litigation, which underlie the discretionary granting of interlocutory appeals, require denial of New York Hospital's application to this Court for permission to appeal the order denying the motion to dismiss."

5. On September 8, 1981 New York Hospital moved for summary judgment pursuant to Bankruptcy Rule 756. A hearing was held in this court on September 14, 1981 wherein decision was reserved pending the submission on September 25, 1981 of additional documents in support of defendant's motion with sufficient time allowed for the trustee's reply.

6. The grounds for defendant's motion for summary judgment are based on an assignment of medical insurance proceeds to New York Hospital executed by Marlene Moskowitz [one of the debtors], the status of New York Hospital as a "participating hospital member" of Blue Cross, and on language contained in a newly submitted exhibit of debtors' medical insurance contract with Blue Cross.

## DISCUSSION

As this court stated in its recent and as yet unreported decision of September 28, 1981, *In re Clover Donut of White Plains Corp.*, 14 B.R. 205, at page 208:

"Summary judgment is a drastic remedy, since it cuts off a party's right to present his case and, therefore, is available only under limited circumstances. In deciding a motion for summary judgment the court does not try issues of fact; "... it can only determine whether there are issues to be tried" and in so doing must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought. *United States v. Diebold*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975). The moving party has the burden of demonstrating the absence of any material factual issue genuinely in dispute. *Heyman v. Commerce and Industry Co.*, supra. Rule 56 of the Federal Rules of Civil Procedure, which authorizes summary judgment in appropriate cases, is made applicable in adversary proceedings in bankruptcy cases by Bankruptcy Rule 756. The rule permits a party to pierce allegations of fact in the pleadings and to obtain relief by summary judgment where facts set forth in detail in affidavits, admissions, and materials extraneous to the pleadings show that there is no genuine issue of material fact to be tried."

### A. THE ASSIGNMENT TO NEW YORK HOSPITAL

The trustee served a subpoena dated July 7, 1981 upon the defendant directing it to produce "[a]ll documents, records, releases, memorandums, correspondence, *assignments*, contracts, bill, [sic] receipts, *with debtor and Blue Cross with respect to and or may affect [sic] the debtors, the defendant or Blue Cross.*" [Emphasis added]

■ No documents were supplied pursuant to the subpoena to indicate that the debtors had assigned medical insurance proceeds to the defendant. However, in defendant's Reply Affidavit filed September 25, 1981, Mr. Ted Meroe, the Assistant Comptroller of New York Hospital explains in his sworn statement that

"[i]t was my understanding that because the Assignment does not make any express reference to Blue Cross and because New York Hospital receives payments directly from Blue Cross, the Assignment was not a document 'involving Blue Cross.' Accordingly, although I realized that the Assignment encompassed payments by Blue Cross to New York Hospital, I did not believe that production of the Assignment was required by the subpoena."

Notwithstanding Mr. Meroe's explanation, it is clear that the trustee's subpoena called for documents that "may effect [sic] *the debtors, the defendant* or *Blue Cross.*" [Emphasis added]. Surely the Assignments would affect the debtors and the defendant even if, assuming arguendo, they did not involve Blue Cross. Manifestly, these documents should have been submitted on the return date of the subpoena, July 22, 1981. The two Assignments in question were filed with the clerk of this court on September 8, 1981 as Exhibits B and C of defendant's Affidavit sworn to by Mr. Harold P. Hogstrom, Comptroller of New York Hospital.

■ Indeed, if the Assignments had been produced when first requested much time and energy of this court and the attorneys involved could have been spared. Moreover, the August 21, 1981 opinion of this court, *In re Moskowitz,* 7 B.C.D. 1314, 13 B.R. 357 (S.D.N.Y.1981) could have dealt more definitively with the issues concerning the Assignments. In that opinion reference was made to a quotation from *4 Collier on Bankruptcy* ¶ 541.01, pp. 541–7, relying on language contained in the legislative history found in House Report No. 595, 95th Cong., 1st Sess. 367–8 (1977); Senate Report No. 989, 95th Cong., 2d Sess. 82–3 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787, which stated as follows:

"Section 541 will not apply in those instances where property which ostensibly belongs to the debtor is in reality, held by the debtor in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance and the insurance company had sent payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in constructive trust for the person to whom the bill was owed. The payment would not, therefore, become property of the estate pursuant to section 541."

This court stated in its opinion that

"While under certain circumstances the quotation from *Collier on Bankruptcy* may be correct, the language is too broad because it assumes certain unexpressed facts. If the facts reveal that the debtors previously assigned the insurance proceeds to New York Hospital then, of course, any payment to the debtors might be held by them in a fiduciary capacity and under a constructive trust so as not to constitute property of the estate. See *Gamble v. Mathias,* 61 F.2d 911 (5 Cir. 1932); *In re Summer,* 35 F.2d 930 (E.D.N.Y.1928). Whether or not a trust will be imposed in a bankruptcy proceeding is governed by state law. *Elliott v. Bumb,* 356 F.2d 749, 753 (9 Cir. 1966), cert. denied, 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966); *In re Esgro, Inc.,* 645 F.2d 794, 797 (9 Cir. 1981). Absent any assignment of the proceeds by the debtors or any designation that the medical insurance proceeds should be paid directly to New York Hospital, or some additional facts as would support a constructive trust under applicable state law, this court would be hard pressed to accept the categorical statement in *Collier on Bankruptcy* that medical insurance proceeds received by a debtor before the debtor paid the medical bill "would actually be held in constructive trust for the person to whom the bill was owed." *Moskowitz,* 7 B.C.D. at 1316, 13 B.R. 357.

If evidence as to the assignment had been forthcoming at the August 19, 1981 hearing, this court would have ruled that the insurance proceeds did not constitute property of the estate, and that Blue Cross payments to New York Hospital did not involve a transfer of property of the debtor, negating a theory of voidable preference.

As expressed in defendant's Meroe and Hogstrom Affidavits, patients admitted to New York Hospital are routinely required to sign a "Uniform Assignment And Release of Information Statement" when the patient informs the hospital that the bill is covered by any form of insurance, unless a deposit of $3500 is made toward the cost of their hospitalization. The wording of the Assignment is as follows:

> "Assignment to The New York Hospital I hereby assign, transfer, and set over to the above named Medical facility sufficient monies and/or benefits to which I may be entitled from governmental agencies, insurance carriers, or others who are financially liable for my hospitalization and medical care to cover the costs of the care and treatment to myself or my dependent in said hospital. I understand I am financially responsible for charges not covered by the policy or plan."

New York Hospital's records indicate that Marlene Moskowitz was admitted to the Hospital on January 1, 1980 and again on April 6, 1980 and executed such an Assignment on each occasion. The trustee asserted in his Affidavit that the Assignments were "insufficiently clear and vague and does not meet the requirements under New York law." (Page 5 of Plaintiff's Affidavit).

It would be impossible for defendant's form of Assignment to list with particularity every insurance carrier, governmental agency or other source of funds that might ever be contractually responsible for the services rendered to a patient admitted at New York Hospital. The fact that Blue Cross is not listed by name does not necessarily condemn the Assignment as too vague. There is no particular phraseology required to effect an assignment. *In re*

*Itemlab, Inc.*, 197 F.Supp. 194 (E.D.N.Y. 1961). All that is required is that the property must be sufficiently identifiable and there must be an intent to assign a present right in the subject matter of the assignment, divesting the assignor of all control over that which is assigned. *Authorized Credit Corp. v. Enterprise Indus. Co.*, 109 N.Y.S.2d 687 (1951); *Coastal Commercial Corp. v. Samuel Kosoff & Sons, Inc.*, 10 A.D.2d 372, 199 N.Y.S.2d 852 (1959). Additionally, the trustee has attacked the Assignment for lacking an acknowledgment. New York requires no acknowledgment of a written assignment except when required by statute. 6 N.Y.Jur.2d *Assignments* § 37, p. 276; 1 N.Y.Jur.2d *Acknowledgments* § 4. Accordingly, there is no basis for plaintiff to suggest that the Assignment is invalid under New York law. However, even if it had been invalid, the defendant has two more arrows in its quiver to quell the trustee's advance.

## B. NEW YORK HOSPITAL'S PARTICIPATING MEMBER STATUS.

Plaintiff stated in his opposing affidavit that New York Hospital had no contract with Blue Cross and "can only be construed as a non-participating hospital," thereby having no right to receive payments directly from Blue Cross for hospital services New York Hospital provides to Blue Cross subscribers.

New York Hospital concedes that it did not submit a copy of its agreement with Blue Cross in response to plaintiff's July 7, 1981 subpoena because it was unable to locate a copy of the agreement. However, a copy of such agreement was filed with this court on September 25, 1981 as Exhibit "A" of defendant's Reply Affidavit, in accordance with the conditions set at the September 14, 1981 hearing.

The agreement reflects that on April 30, 1935 New York Hospital contracted with Blue Cross to become a "participating hospital member" of Blue Cross. As a member hospital, New York Hospital has a contractual right to receive payments directly from Blue Cross for hospital services New York

Hospital renders to Blue Cross subscribers. Illustrative of this point is paragraph IV, subsection 2 of the agreement which states:

"2. This corporation [Blue Cross] will compensate member hospitals periodically for the services rendered by them to the subscribers [debtors] to this Plan [Blue Cross Hospital Service Plan] by paying to each a fixed amount per day of hospital service rendered, which amount is at all times subject to the determination of the board of directors of this corporation and subject to the approval of the State Department of Social Welfare."

Thus it is clear that New York Hospital and not the debtors had a contractual right to receive the payments from Blue Cross.

### C. THE DEBTORS' MEDICAL INSURANCE CONTRACT WITH BLUE CROSS.

■ Defendant, New York Hospital, included in Exhibit "C" of its Reply Affidavit a pro forma contract obtained from Blue Cross identical to the one entered into between the debtors and Blue Cross and in effect during the portion of 1980 that Marlene Moskowitz was a patient at New York Hospital.

Plaintiff states in his opposing affidavit (at pp. 3–4) that under the contract in force between the debtors and Blue Cross during the early part of 1980 the debtors were entitled to be paid by Blue Cross to cover the cost of services rendered to Marlene Moskowitz during her stay in the hospital. However, the applicable provisions of the debtor's contract with Blue Cross indicate otherwise:

1. The contract states in item J. of Article III:

"Ordinarily, if you are treated by a participating practitioner, payments go to him. But if it is noted on the Statement of Services that you paid your practitioner's charges, the payment goes to you. If you receive covered services from a nonparticipating practitioner, we pay benefit allowances for those services to you; we do not pay non-participating practitioners directly."

2. The contract further states in paragraph E.1 of Article II:

"[D]uring the first 21 days of an in-hospital benefit period, you are, in semi-private or ward accommodations, entitled to 'full benefits'—*the participating hospital will not charge you for in-patient hospital service as covered under this contract . . .*" [Emphasis added].

Accordingly, whether the medical services are rendered by a "participating" private practitioner or by a "participating" hospital, the debtors' plan evidences no right to receive payments from Blue Cross (unless of course, they had already paid the bill outright) but rather, the terms provide for Blue Cross to pay New York Hospital directly for hospital services rendered to the debtors as Blue Cross subscribers.

The only direct billings of the debtors were in connection with services provided by New York Hospital that are not covered by their plan (television; gift shop charges) and for a portion of services originally approved by Blue Cross but subsequently ruled ineligible for coverage.

### CONCLUSION

The undisputed facts reveal that Marlene Moskowitz executed two separate Assignments of medical insurance proceeds to New York Hospital, answering negatively the question whether the proceeds could be considered property of the estate under Code § 541.

Additionally, the agreement between Blue Cross and New York Hospital bestowing "member" status upon the Hospital, and the medical insurance contract between Blue Cross and the debtors both reflect that notwithstanding the Assignments, the insurance proceeds were to be paid directly to New York Hospital for services rendered to the debtors (subscribers) and that the debtors were not entitled to be paid directly for expenses incurred during Marlene Moskowitz' stay in the hospital.

Accordingly, New York Hospital's motion for summary judgment is granted, without prejudice to any application the trustee

might make for costs incurred for having to commence this action because New York Hospital was not forthcoming in response to his subpoena.

IT IS SO ORDERED.