In re GEMINI AT DADELAND, LTD., Debtor.

GEMINI AT DADELAND, LTD., Plaintiff,

v.

BISCAYNE BANK, Defendant.

Irving Trust Co., Intervenor-Defendant.

Bankruptcy No. 82–01030–BKC–TCB. Adv. No. 82–0638–BKC–TCB.

United States Bankruptcy Court, S.D. Florida.

Sept. 24, 1982.

Bennett Feldman, Miami, Fla., for debtor.

Lawrence H. Rogovin, Miami, Fla., for Biscayne Bank and Irving Trust Co.

Gunn, Venney & Buhler, Miami, Fla., for Biscayne Bank.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

This chapter 11 debtor seeks the turnover of an account in its name held by the defendant Biscayne Bank. The bank has answered and counterclaimed, asserting a security interest in the account on behalf of itself and another bank, Irving Trust. The bank also claims a setoff against the account. The matter was tried on August 19, at which time Irving Trust was permitted without objection to intervene as defendant-counterclaimant and the matter was submitted on stipulation of facts filed September 8. (C.P.No.7).

The debtor borrowed from Irving Trust to build 96 condominium units. It ran into trouble after building only 32 units and selling only a handful of these. It admits it owes Irving at least $2.5 million on a mortgage agreement recorded before bankruptcy with the clerk of court.

The account in question ($21,297) contains only those sums deposited with the debtor by purchasers who defaulted on their contracts to purchase units from the debtor. The mortgage agreement (Ex. 3, p. 2) explicitly includes as collateral for the loan:

"all deposits and payments arising out of or relating to the aforesaid purchase agreements."

The purchase agreements, "together with all deposits" paid on the agreements, were explicitly assigned to Irving (Ex. 4). The assignment was also recorded before bankruptcy with the Clerk of the court.

By statute, a chapter 11 debtor enjoys the rights and status of a trustee. 11 U.S.C. § 1107(a). This includes the status of a perfected lien creditor as of the date of bankruptcy. § 544(a)(1).

It is the debtor's position that neither Biscayne nor Irving has a security interest in the account, because no financing statement was ever filed with the Secretary of State and, the debtor argues, such filing is the only way to perfect a security interest in personality.

■ The fact that a security interest in the purchase accounts and the proceeds from those accounts was given by the recorded mortgage did not perfect Irving's security interest in either the purchase accounts or the proceeds, because these were not "the creation or transfer of an interest in or lien on real estate" and, therefore, were not excepted from Article 9 by § 679.104(10), Florida Statutes (U.C.C. § 9–104) or otherwise. As was held in *Matter of Equitable Development Corp.*, 5 Cir.1980, 617 F.2d 1152, 1156–1157, which dealt with a claimed security interest in purchase agreements like the ones involved here:

"The security interest is created by contract (the Assignment), emanates from

the rights and obligations of the executory contract between vendor and vendee, and must be characterized as personal property, even though a security interest in land was also assigned. . . . "These rights of payment were the accounts receivable transferred by the assignment and are clearly personal property subject to the Uniform Commercial Code."

■ We turn, therefore, to the U.C.C. There is no way Irving can establish that its security interest in the account was perfected under § 679.306, Florida Statutes, (U.C.C. § 9–306), which relates to the *proceeds* of collateral, because Irving cannot establish that "the interest in the original collateral was perfected". § 9–306(3). This is an essential requirement. The original collateral, from which the proceeds were derived, is the purchase contracts and the assignment transferring them to Irving. As we have seen, the security interest in these contractual rights was not perfected.

The account, however, may be considered as independent cash collateral quite apart from its status as proceeds of other collateral. Section 679.304(1), Florida Statutes (U.C.C. § 9–304) provides in pertinent part:

"A security interest in money . . . can be perfected only by the secured party's taking possession."

■ The exceptions provided by that subsection are not applicable here. The account in question is admittedly money. The account was in Biscayne's possession. Biscayne was a participant in Irving's loan agreement and, therefore, held the account as Irving's agent. The debtor, in fact, knew of this relationship and recognized the lenders' control of this account. It is settled that the possession of an agent satisfies the requirement of U.C.C. § 9–304(1). *Hartzog v. Dixon*, Fla.App.1979, 366 So.2d 848; U.C.C. § 9–305 Official Comment 2.

If we bear in mind that the purpose of requiring that a security interest be perfected is to give a lender a reasonable opportunity to discover existing liens on collateral relied upon by the lender, it is plausible that possession of cash collateral by a creditor (or its agent) fully satisfies this

legislative purpose, even if the creditor (or its agent) is a bank. The good faith lender would not reasonably rely on a bank account as collateral without either immobilizing those funds under the lender's control or verifying from the bank the availability of those funds as collateral. In either event, it would have to deal with the bank and would learn then that the account was already restricted as collateral for a pre-existing debt.

I find and conclude, therefore, that Irving had a security interest in the account, perfected by possession under § 9–304(1). It is also clear that Irving is entitled to retain the funds in this account, offsetting the amount against the debt owed to Irving. 11 U.S.C. § 553(a).

As is required by B.R. 921(a), a separate judgment will be entered dismissing the complaint with prejudice and granting the counterclaim, permitting Irving Trust to apply the funds in question ($21,297) to the indebtedness owed Irving by the debtor. Costs will be taxed on motion.