**In the Matter of ARMANDO GERSTEL, INC., Debtor.**

**Jeanette E. TAVORMINA, as Trustee, Appellant,**

**v.**

**AQUATIC COMPANY, N.V., et al., Appellees.**

**EFRAIM ROSEN, INC., Appellant,**

**v.**

**Jeanette E. TAVORMINA, as Trustee, et al., Appellants.**

**Nos. 85–782–Civ, 85–784–Civ.**

United States District Court,
S.D. Florida,
Miami Division.

Sept. 30, 1986.

Robert G. Hewitt, Harper & Hewitt, Miami, Fla., for Tavormina, Trustee.

Britton, Cohen, Cassel, Kaufman & Schantz, Miami, Fla., for Efraim Rosen, Inc.

Jerry M. Markowitz, Miami, Fla., for Herris.

Maurice Rosen, North Miami, Fla., for Public Ins. Consultants.

Hauser & Metsch, Miami, Fla., for Aquatic Co.

Richard Phillips, Schatzman and Schatzman, Coral Gables, Fla., for Evvco Enterprises, Inc.

Angelo Ali, Miami, Fla., for Lillian Kaufman and Beuche Girod Corp.

Phillips & Phillips, Miami, Fla., for Florence R. Semet.

Traline & Potash, North Miami, Fla., for Michael Landy.

Billie Tarnove, P.A., Fort Lauderdale, Fla., for Irving Halpern, Inc.

Armando Oliveros, Jr., Miami, Fla., for Fausto Villar.

## ORDER AFFIRMING BANKRUPTCY COURT AND REMANDING FOR FURTHER PROCEEDINGS

EDWARD B. DAVIS, District Judge.

These two related bankruptcy appeals arise out of the bankruptcy proceedings of ARMANDO GERSTEL, and the proceeds of an insurance claim he filed. TAVORMINA appeals the bankruptcy court's determination that GERSTEL validly assigned his claim in an insurance policy to several creditors. ROSEN appeals the court's dismissal of his garnishment action. 43 B.R. 925.

### I.  Facts

GERSTEL was in the jewelry business. In 1981 an armed assailant robbed his store. The next day he hired a law firm, an accountant, and insurance adjustors to help him file his claim for casualty loss with JEWELERS MUTUAL INSURANCE COMPANY.

GERSTEL eventually filed a $2.1 million claim with JEWELERS MUTUAL. JEWELERS MUTUAL denied its obligation. GERSTEL then sued JEWELERS MUTUAL and its agent, MICHAEL WEXLER, in Florida state court. In June of 1983 (two years later) the parties settled for $1.5 million.

While GERSTEL's case against JEWELERS MUTUAL was pending, GERSTEL assigned all his rights to the proceeds of his insurance policy to several creditors, in the event he won the lawsuit against JEWELERS MUTUAL. When the case was settled, the funds were placed in escrow because of these third-party claims against the proceeds. The validity of these assign-

ments is essentially the subject of CASE NO. 85–782–CIV–DAVIS.

Meanwhile, another GERSTEL creditor, EFRAIM ROSEN, sued GERSTEL. ROSEN eventually won, and then sought a Writ of Garnishment against JEWELERS MUTUAL for GERSTEL's money. At the time, however, the lawsuit between JEWELERS MUTUAL and GERSTEL was still pending. The effect of the garnishment is the subject of 85–784–CIV–DAVIS.

In November 1983, before the state court could distribute the settlement proceeds, GERSTEL filed a petition for bankruptcy. Jeanette TAVORMINA was appointed trustee. In 1984 the escrow funds were transferred to the trustee, pursuant to order of the bankruptcy court. The Trustee then filed an adversary proceeding challenging the various assignments.

In 1984 the bankruptcy court issued its Findings of Fact and Conclusions of Law (FOF/COL). The court determined the priorities among all the competing claims, including the claims of the various assignees of the insurance proceeds. The court held that:

1. The lien of GOODHART for attorneys' fees in representing GERSTEL had top priority, in the amount of $600,000.

2. The claim of Irving Herris for accountant's fees was unenforceable.

3. The claim of the insurance adjustors was also unenforceable, although GERSTEL's assignment of his claim to the adjustors was valid.

4. All assignments to creditors were absolute assignments of GERSTEL's claim against JEWELERS MUTUAL, not security agreements. Thus, they were enforceable because not subject to the filing requirements of the U.C.C. The priority of the assignments, in chronological order of the date of execution, are: a) ADJUSTORS; b) Irving HALPERN; c) Florence SEMET; d) Fausto VILLAR; e) AQUATIC CO.; f) BUECHE GIROD CORP.; g) D'ESPOSITO BROS.

JEWELRY, INC.; h) Estate of Charles KAUFMAN.

5. As to the garnishor EFRAIM ROSEN, GERSTEL's claim against JEWELERS MUTUAL was still uncertain at the time the writ of garnishment was served. When the parties later settled, the funds were placed in escrow, thus they never became subject to garnishment. ROSEN got nothing.

6. None of the other creditors had established priority over the attorney's lien and assignments.

7. GOODHART and the various assignees were entitled to interest upon their respective claims.

TAVORMINA has appealed the bankruptcy court's ruling in 85–782–CIV–DAVIS; ROSEN has appealed in 85–784–CIV–DAVIS. Several appellees have filed briefs. No one, however, contests GOODHART's priority over the first $600,000.

## II. Discussion of Law

### A. Assignments of Insurance Claim

TAVORMINA claims, first, that GERSTEL's transfers of his interest in the settlement proceeds were not assignments, but mere security agreements. Therefore, the assignees were required to comply with the U.C.C. filing requirements in order to perfect their security interests. Since they did not do so, TAVORMINA claims, the transfers are void.

*Fla.Stat.* Section 679.9–102(1) provides that filing requirements apply

(a) to any transaction (regardless of its form) *which is intended to create a security interest* in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights; and also

(b) to any sale of accounts, contract rights or chattel paper.

(emphasis added). The intent of the parties governs whether a particular document or transaction creates a security interest or an assignment. *Hassett v. Revlon, Inc. (In re*

*OPM Leasing Services, Inc.),* 23 B.R. 104, 115–16 (Bkrtcy., S.D.N.Y.1982); *See also* 4 Anderson, *Uniform Commercial Code* 31 (1973); 4 Fla.Jur.2d, Assignments Section 13. No formal wording is required. A Court examines the practices of the parties, their objectives, their business practice and their relationship. *Major's Furniture Mart, Inc. v. Castle,* 602 F.2d 538 (3d Cir. 1979). It finds an assignment when there is an intent to assign a present right in the subject matter of the assignment, divesting the assignor of all control over that which is assigned. *Matter of Candy Lane Corp.,* 38 B.R. 571 (Bkrtcy., S.D.N.Y.1984); *In re Moskowitz,* 14 B.R. 677 (Bkrcy, S.D.N.Y. 1981).

■ The various contracts assigning the interests in the insurance proceeds were worded somewhat differently. Some are worded more strongly than others. The bankruptcy judge, however, determined that all were *intended* as absolute assignments, not as security interests. This is a finding of fact, and must be affirmed unless clearly erroneous. *In re Garfinkle,* 672 F.2d 1340 (11th Cir.1982); *Birmingham Trust National Bank v. Case,* 755 F.2d 1474 (11th Cir.1985). While it is debatable whether these transfers were intended to be assignments or security, the bankruptcy judge's findings were not clearly erroneous. The Court finds that the transfers were assignments made in payment of pre-existing debt. Therefore, perfection was not required. *See In re Moskowitz,* 14 B.R. 677 (Bkrcy, S.D.N.Y.1981).

Moreover, *Fla.Stat.* Section 679.104(7) specifically excludes "a transfer of an interest or claim in or under any policy of insurance except as provided with respect to proceeds (Section 679.306) and priorities in proceeds (Section 679.312)" from the filing requirements of the U.C.C. The assignments also qualify as transfers of a claim under an insurance policy.

### B. Whether Assignments were Proceeds

TAVORMINA argues that, under Section 679.104(7), the transfers were assignments of *proceeds* of the insurance policy, and therefore filing was required. "Proceeds" as defined in Section 679.306 includes:

whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement.

"Proceeds" as used in Section 679.104(7) and as defined in Section 679.306 refers to insurance payments by reason of loss or damage to collateral. The appellees' claims are not based upon a security interest in the stolen jewelry, but upon other prior indebtedness. There was no previous "collateral" that was sold or destroyed. Therefore, the insurance money is not "proceeds" under the U.C.C. Since none of the appellees ever had a security interest in the jewelry, the U.C.C. does not apply to their transaction. *See Paskow v. Calvert Fire Ins. Co.,* 579 F.2d 949 (5th Cir.1978); *Beaver Crane Service, Inc. v. National Surety Corp.,* 391 So.2d 224 (Fla. 3d DCA 1980); *Kahn v. Capital Bank,* 384 So.2d 976 (Fla. 3d DCA 1980).

### C. Assignments were not Preferential Transfers

TAVORMINA next claims that the assignments were preferential transfers under Section 547 of the Bankruptcy Code. The bankruptcy judge made no findings on the issue. Section 547 voids any transfer made within ninety days of bankruptcy if not perfected within ten days, or when the case is commenced, whichever is later.

■ All of the assignments took place outside the ninety day period. TAVORMINA claims that since the transfers were not perfected, under Section 547(e) they are deemed made within the ninety day period. Since these were not security interests, however, perfection was not required. Moreover, the funds never became "property of the debtor" under Section 541. The legislative history of Section 541 explains that the section "will not apply in those instances where property which ostensibly belongs to the debtor is in reality held by

the debtor in trust for another." *See* U.S. Cong. & Admin.News 1978, p. 5787; *See also In re Moskowitz, supra.* Therefore, any payments that JEWELERS MUTUAL made to GERSTEL under the settlement agreement within the ninety-day period would be held in trust for the assignees, and would not constitute property of the debtor's estate.

### D. Interest Prior to Final Judgment

■ The bankruptcy judge determined that GOODHART and the assignees would be entitled to interest on their claims under *Matter of Innkeepers of New Castle, Inc.,* 671 F.2d 221, 231 (7th Cir.1982). Interest would begin to run from the time the debts became due. *Brooks v. School Board of Brevard County,* 419 So.2d 659 (Fla. 5th DCA 1982); *Bryan & Sons Corp. v. Klefstad,* 265 So.2d 382 (Fla. 4th DCA 1972). In this case, however, the assignment involved a contingent claim; therefore, the interest can only be assessed from the date of judgment against JEWELERS MUTUAL, when the assignees became entitled to the principal amount. *Klein v. Newburger, Loeb & Co.,* 151 So.2d 879 (Fla. 3d DCA 1963). Interest is computed at the statutory rate of 12% under *Fla.Stat.* Section 687.01.

### E. Priority of SEMET over AQUATIC

The bankruptcy court held that SEMET's claim had priority over AQUATIC's based on its earlier intervention in the lawsuit. The bankruptcy judge apparently did not address the letter from AQUATIC to JEWELERS MUTUAL giving notice of its claim. If the letter were conclusive, then AQUATIC would get priority, since priority is established according to the order of notice to the debtor. *See Boulevard National Bank of Miami v. Air Metal Industries, Inc.,* 176 So.2d 94 (Fla.1965); *Oper v. Air Control Products, Inc. of Miami,* 174 So.2d 561 (Fla. 3d DCA 1965). Therefore, the Court remands this case to the bankruptcy court for determination of this issue.

### F. Specific Amount of Award

Lastly, TAVORMINA complains that the bankruptcy judge merely ordered her to distribute the proceeds in accordance with the final judgment, without specifying the amounts to which each was entitled. The Court remands on this issue as well. The bankruptcy court is directed to specify the amounts to which each assignee is entitled.

### G. Rosen's Garnishment Claim

The last issue on this appeal concerns ROSEN's garnishment proceeding against JEWELERS MUTUAL. ROSEN obtained a judgment against GERSTEL and sought to garnish whatever assets of GERSTEL that JEWELERS MUTUAL possessed. The bankruptcy court dismissed its claim on several grounds.

■ As to appellees HALPERN, SEMET, AQUATIC, VILLAR, and BUECHE GIROD CORP., ROSEN's claim must be dismissed because, at the time of service of the garnishment writ, GERSTEL had already transferred all his interest in the insurance claim to these appellees. Thus, JEWELERS MUTUAL did not possess any property of GERSTEL that could be garnished. The garnishor only acquires such rights as the debtor could assert against the garnishee. *See Coyle v. Pan American Bank of Miami,* 377 So.2d 213 (Fla. 3d DCA 1979). When ROSEN served its Writ of Garnishment, GERSTEL had already relinquished any rights it had against JEWELERS MUTUAL to all appellees except D'ESPOSITO BROTHERS and KAUFMAN. Since ROSEN's claim may still have priority over D'ESPOSITO BROTHERS and KAUFMAN, however, the Court must review the bankruptcy judge's Findings of Fact and Conclusions of Law as they apply to ROSEN's claim.

ROSEN claims that under Florida law the entry of Judgment against a garnishee relates back to service of the writ, so that even if the claim was contingent when ROSEN filed his Writ of Garnishment, when Judgment was rendered it became effective as of the date of service. *Florida East*

*Coast Ry. Co. v. Consolidated Engineering Co.,* 116 So. 19, 21 (Fla.1928).

The flaw in ROSEN's argument, however, is that, even if ROSEN is right, when the writ was served JEWELERS MUTUAL's liability to GERSTEL was still contingent; therefore, JEWELERS MUTUAL did not possess any property of GERSTEL. Florida law requires that the obligation from the garnishee (in this case JEWELERS MUTUAL) to the primary debtor (GERSTEL) not be contingent or uncertain. *See Tomlin v. Anderson,* 413 So.2d 79 (Fla. 5th DCA 1982); *Chaachou v. Kulhanjian,* 104 So.2d 23 (Fla.1958). Moreover, by the time the parties had settled and it became clear that JEWELERS MUTUAL did owe GERSTEL the insurance proceeds, GERSTEL had already assigned his rights in the settlement proceeds to the remaining assignees, D'ESPOSITO BROTHERS and KAUFMAN. Thus, once again JEWELERS MUTUAL had no property of GERSTEL that ROSEN could garnish.[1]

■ Nor does ROSEN have priority over TAVORMINA pursuant to service of the garnishment writ. Florida law provides that a lien is obtained on the *personal* property of the debtor when the writ of execution is delivered to the sheriff. *Smith v. Purdy,* 272 So.2d 545 (Fla. 3d DCA 1973); *In re Belize Airways, Ltd.,* 20 B.R. 817 (Bkrcy., S.D.Fla.1982). While, as ROSEN suggests, execution and garnishment are two similar forms of final process, no Florida court has ever held that a writ of garnishment is the same as execution for the purpose of creating a lien on personal property. Until a Florida court rules otherwise, a judgment creditor who seeks a lien for the purpose of establishing priority in bankruptcy must deliver a writ of execution to the sheriff; it is free to seek other remedies simultaneously.

■ Since under 11 U.S.C. Section 544 the trustee in bankruptcy acquires the status of a judicial lien creditor whose execution against the debtor has returned unsatisfied, the trustee takes priority over ROSEN.

It is ORDERED AND ADJUDGED that (1) the bankruptcy court's Findings of Fact and Conclusions of Law are hereby AFFIRMED IN PART, REVERSED IN PART, and REMANDED IN PART. This case is hereby REMANDED to the bankruptcy court for proceedings consistent with this opinion.

---

1. The cases that ROSEN cites are inapposite because they all assume that the garnishee possesses property of the debtor.