In re RADICE CORPORATION, et al., Debtors.

RADICE CORPORATION, Crosswinds of Delray, Inc., Radice of Columbus, Inc., Radice Lands, Inc., Radice North Hills, Inc., and Radice of Savannah, Inc., Plaintiffs,

v.

The FIRST NATIONAL BANK OF BOSTON, a national banking association, Defendant.

Bankruptcy No. 87–04268–BKC–SMW. Adv. No. 88–0177–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

June 30, 1988.

Mark D. Bloom, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, Fla., for plaintiffs.

Herbert Stettin, Miami, Fla., Glen Rafkin, Young, Stern and Tannenbaum, P.A., North Miami Beach, Fla., for defendant.

Robert A. Schatzman, Schantz, Schatzman, Aaronson & Berlin, Miami, Fla., for bondholders' committee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came before the Court for trial in Miami upon a complaint filed by Radice Corporation, Crosswinds of Delray, Inc., Radice of Columbus, Inc., Radice Lands, Inc., Radice North Hills, Inc., and Radice of Savannah, Inc., to obtain a declaratory judgment and other relief determining the validity, priority and extent of liens and other interests asserted by the defendant in certain property of the plaintiffs' Chapter 11 estates, and to avoid certain unperfected liens pursuant to 11 U.S.C. § 544(a) and (b). The Court having heard the testimony, examined the evidence presented, observed the candor and·demeanor of the witnesses, considered the argument of counsel, and otherwise been fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) and governed by Part VII of the Bankruptcy Rules pursuant to, Rule 7001(2) and (9). This Court has jurisdiction over the subject matter arising under Title 11 of the United States Code pursuant to 28 U.S.C. § 1334(b) and other applicable law. Venue is proper in this District pursuant to 28 U.S.C. § 1409(a).

Each of the plaintiffs is a debtor in possession in jointly administered Chapter 11 proceedings before this Court. This adversary proceeding arises out of a certain loan transaction which occurred on or about July 30, 1987 (the "July transaction"), involving the plaintiffs and other affiliated debtor and non-debtor entities, and the defendant, The First National Bank of Boston ("BancBoston"), as agent for itself, Amerifirst Savings & Loan Association, Barnett Bank of South Florida, N.A., Chemical Bank, and Southeast Bank, N.A. (collectively, the "bank group").

The net effect of the July transaction was to transform unsecured indebtedness owed to members of the bank group solely by Radice Corporation into new secured debt evidenced by a loan agreement and promissory note, pursuant to which Radice Corporation and certain of its subsidiaries, including the plaintiffs, each became jointly and severally liable in the amount of $40,-606,500.00 on a non-recourse basis. Certain of those subsidiaries executed second mortgages as collateral for the new secured debt evidenced by the loan agreement and note. As additional collateral, the plaintiffs each executed an agreement not to encumber and assignment of proceeds (collectively, the "assignments") in favor of BancBoston.

By way of this adversary proceeding, the plaintiffs seek to establish in Count I of their complaint that the assignments do not constitute liens, encumbrances or interests in the real property of their respective estates; in Counts II and/or III that the assignments do not constitute liens, encumbrances or interests in the personal property of their respective estates; and in Count IV that even if the assignments constituted pre-petition liens on the proceeds of their respective real property, such liens do not extend to post-petition proceeds by virtue of 11 U.S.C. § 552.

The defendant takes no issue with these allegations, contending by way of an affirmative defense that the assignments were not intended as collateral but were absolute assignments which divested the plaintiffs of the ownership interest in the proceeds of their properties. For the reasons more fully set forth hereinafter, the Court finds in favor of the plaintiffs on Counts I, II and III, and accordingly need not address Count IV.

In connection with the July transaction, certain subsidiaries of Radice Corporation executed second mortgages or deeds of trust in favor of BancBoston. However, unlike those subsidiaries, the plaintiffs were unable to do so. Plaintiff Crosswinds of Delray, Inc. held mere legal title to real property as nominee for a joint venture, and thus lacked the ability to grant a mortgage on that property. Plaintiffs Radice North Hills, Inc., Radice of Columbus, Inc., Radice of Savannah, Inc. and Radice Lands, Inc. were unable to obtain the consent of existing mortgagees to the creation of an

additional lien in favor of BancBoston, as required under their first mortgages. Consequently, each of these plaintiff subsidiaries, together with certain other Radice subsidiaries not parties to this adversary proceeding, executed an assignment in favor of the defendant as additional security, in lieu of the requested second mortgage.

■ The issue raised by Count I of the complaint is whether the plaintiffs are entitled to declaratory relief that the assignments create no lien, interest or encumbrance in their respective real property. The Court finds that no lien exists in favor of the defendant, as the plain language of paragraph 12 of each assignment mandates:

> 12. Default. This Agreement shall *never* be construed or be deemed to create *any lien or other encumbrance against the property* described on Exhibit "A" attached hereto. Assignee specifically disclaims any right to proceed against the property described on Exhibit "A" by way of foreclosure or other similar action to obtain possession of the property. In the event of a breach of this Agreement by either party, each party shall be entitled to maintain such action or actions against the other for breach of contract (excluding actions to obtain possession of the property) as are permitted by applicable law. In addition, if Assignor is the defaulting party, Assignee shall be entitled to deem such default herein as a default pursuant to the Loan Agreement between Assignor and Assignee of even date herewith, and thereafter exercise such rights and remedies of Assignee pursuant to said Loan Agreement.

(emphasis added). As admitted by the witnesses, this language was included in light of the parties' understanding that no lien could be granted because of prohibitions in prior mortgages, or for other reasons.

Therefore, the Court finds on the basis of the foregoing language that the assignments do not create liens, encumbrances or other interests in the real property of the plaintiffs' estates. Moreover, the evidence shows that at the time of the July transaction, the parties fully understood that the assignments did not constitute liens or mortgages on the plaintiffs' real property. In fact, it was precisely because of the plaintiffs' inability to grant liens on their respective real property through the execution of second mortgages that the assignments came into being.

In Counts II and III of the complaint, the plaintiffs contend under 11 U.S.C. § 544(a) and (b) that any lien, encumbrance or interest asserted in their personal property by virtue of the assignments is avoidable. Read in connection with 11 U.S.C. § 1107(a), Section 544 enables a debtor in possession to avoid unperfected liens or interests in its property as of the commencement of the bankruptcy case.

■ The granting clause is contained in paragraph 2 of each assignment, which provides in pertinent part:

> Assignor hereby assigns and sets over unto Assignor all of its right, title and interest in and to that portion of *the proceeds, which Assignor may realize from any sale* ... or other conveyance of the Property.

(emphasis added). The property referred to above is the real property owned by each of the plaintiffs, as more particularly described on Exhibit A attached to its respective assignment. The only interest purportedly granted by the assignment is an interest in proceeds of such property, and not in any other personal property of any plaintiff.

Section 9–306(1) of the Uniform Commercial Code, § 679.306(1), Fla.Stat., defines proceeds as "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds." "Collateral," in turn, is defined as "the property subject to a security interest." § 679.105(1)(c), Fla.Stat. Thus, by definition, a security interest in proceeds cannot be created in the absence of any lien or security interest in the underlying collateral.

The identical analysis was employed in the case of *In re Gemini at Dadeland, Ltd.,* 24 B.R. 57 (Bankr.S.D.Fla.1982), where the lender asserted a security inter-

est in accounts arising out of or relating to purchase agreements for condominium units, and the proceeds of those accounts. As Judge Britton correctly stated in that opinion:

> There is no way (the lender) can establish that its security interest in the account was perfected under § 679.306 ... which relates to the *proceeds* of collateral, because (the lender) cannot establish that 'the interest in the original collateral was perfected.' § 9–306(3). *This is an essential requirement.*

24 B.R. at 58 (emphasis added). Clearly, the result must be the same where, as in the present case, there is no original collateral. *Matter of Armando Gerstel, Inc.,* 65 B.R. 602, 605 (S.D.Fla.1986).

■ Moreover, to the extent that the defendant may assert a lien or security interest in contracts, contract rights or general intangibles, the description of collateral by mere reference to proceeds is insufficient. § 679.110, Fla.Stat. As this Court held in the case of *In re I.A. Durbin, Inc.,* 46 B.R. 595, 598–99 (Bankr.S.D.Fla. 1985), the collateral assignment of an interest in proceeds of contracts for sale of real property creates an interest in personal property subject to the filing requirements of Article 9 of the Uniform Commercial Code, and avoidable by a debtor in possession for lack of perfection. *Matter of Equitable Development Corp. (Frearson v. Wingold),* 617 F.2d 1152 (5th Cir.1980).

In *Durbin,* this Court held that the UCC–1 financing statement filed by the creditor was deficient in its description of the collateral for, among other reasons, the failure to "describe the statutory 'type' of property, i.e., 'general intangibles.' " *Durbin* at 600. In the instant case, the defendant failed even to file a financing statement. The only recorded documents executed by the plaintiff subsidiaries were the respective assignments, which were recorded in the jurisdictions in which their real property is located, rather than with the Florida Secretary of State as required by § 679.401(1)(c), Fla.Stat.

■ In the absence of compliance with the description and recording requirements of Article 9, as established in *Gemini* and *Durbin,* the Court finds that the defendant failed to perfect a lien or interest in any of the plaintiffs' personal property or the proceeds of their real property. The Court further finds that the only interest transferred to the defendant was the mere contractual right, not perfected nor enforceable by foreclosure or other action against any property, to receive proceeds from the sale of the plaintiffs' properties, therefore, any such lien, interest or encumbrance is avoidable under 11 U.S.C. §§ 544(a) and (b) and 1107(a).

■ The defendant argues that its interest did not require perfection by filing because the assignments were not intended as collateral for any indebtedness, but were absolute assignments upon execution and the plaintiffs' subsequent default. The issue of whether a transaction is a security interest is one of fact, to be determined by the intent of the parties. *E.g., Matter of Miller,* 545 F.2d 916 (5th Cir.1977); *Matter of Armando Gerstel, Inc.,* 65 B.R. 602 (S.D.Fla.1986). In determining such intent, the Court looks to the objectives and business practices of the parties, and their relationship. *Gerstel,* 65 B.R. at 605. Having considered all of these factors, the Court finds that the intent of the parties was to create a collateral security interest and not an absolute assignment.

The assignments were executed pursuant to a loan agreement executed by all the plaintiffs and defendant in connection with the July transaction. The terms of the loan agreement conclusively establish the assignments as collateral rather than absolute, defining them as "continuing collateral security" and reciting that they are part of "an overall collateral package." The assignments contain a provision in paragraph 4 for their return upon payment of the specified release prices, and an option in paragraph 2G for the assignor to substitute a mortgage in place of the assignment, thereby indicating that no absolute transfer was intended.

All of the foregoing provisions are totally consistent with the testimony of the plaintiffs' executive vice president, that the

assignments were intended by the parties to serve as part of the collateral for the $40,606,500.00 loan, and not to be absolute. The sole evidence of an absolute assignment is the testimony of the defendant's vice president, that upon default it acquired ownership rights in the proceeds of the subject properties which it could retain even if repaid in full. This testimony would have the Court believe that what was intended as a secured loan transaction between commercially sophisticated and experienced parties with an extensive lending relationship was actually an unprecedented transfer of ownership.

The Court is unable to accept a version of the transaction which would construe the legal effect of the assignments by isolating them from the surrounding facts and accompanying loan documents. The loan agreement, which controls in event of a conflict with the assignments, expressly states that the Assignments are collateral. It also appears that the amount of the indebtedness owed by the plaintiffs under the promissory note and loan agreement was not reduced upon execution and delivery of the assignments, thereby further indicating their collateral nature. *Cf. Gerstel,* 62 B.R. at 605 (assignments made in payment of existing debt were absolute).

In reaching this result, the Court is not unmindful of the result in *Gerstel,* affirming a bankruptcy court finding that transfers of a debtor's interest in insurance proceeds were absolute assignments and not security interests. Indeed, as indicated above, the Court embraces several of the principles enunciated in *Gerstel,* including the proposition that an absolute assignment exists where there is an intent to assign a present right in the subject matter of the assignment and divest the assignor of all control over that property. 62 B.R. at 605. The overwhelming evidence in this case, however, demonstrates that precisely the contrary intent existed with the assignments, which were executed as additional collateral pursuant to the loan agreement rather than as an absolute divestiture of ownership.

In summary, the Court finds and determines that the assignments were intended by the parties to serve as additional collateral and were not absolute, and that the defendant lacks any valid and properly perfected lien or interest in the real property of any plaintiff's estate, and that any such lien or interest in their personal property or the proceeds thereof is avoidable pursuant to 11 U.S.C. §§ 544(a) and (b). A separate Final Judgment of even date has been entered in conformity herewith.