**In re TYSON METAL PRODUCTS, INC., TAFCO, Debtor.**

**Bankruptcy No. 89–00242.**
**Motion No. 89–6474M.**

United States Bankruptcy Court,
W.D. Pennsylvania.

July 16, 1990.

Elly M. Heller, Marcus & Shapira, Pittsburgh, Pa., for debtor.

K. Lawrence Kemp, Kemp and Kemp, New Kensington, Pa., Trustee.

Paul S. McGrath, Jr., Amy E. Bentz, Kincaid, McGrath & O'Keefe, P.C., Pittsburgh, Pa., for Mellon Bank, N.A.

Office of the U.S. Trustee, Pittsburgh, Pa., for the U.S. Trustee.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

The matter presently before the court is the Motion for Relief from the Automatic Stay ("Motion") filed by Mellon Bank, N.A. ("Mellon"). The motion asserts that Mellon is a secured creditor of Tyson Metal Products, Inc., Tafco, (the "debtor"), with regard to certain funds of the debtor held by the trustee. The trustee's response to the motion asserts, among other things, that Mellon does not hold a perfected security interest in life insurance policies owned by the debtor and therefore would not be entitled to any proceeds derived from the policies. This court conducted a hearing on the motion on October 25, 1989, at which time Mellon and the trustee had come to a settlement as to Mellon's claim, excluding the cash surrender value proceeds. These policies were purchased by the debtor, and insured the lives of certain shareholders, directors and officers of the debtor. At the hearing Mellon conceded that they did not hold a U.C.C. Article IX security interest in the policies but argued that the Security Agreement between Mellon and the debtor, dated February 22, 1985, was an assignment of the debtor's policies to Mellon.

The court terminated the automatic stay as it affected Mellon's interest in the debtor's funds held by the trustee "with the exception of the funds of the life insurance proceeds held by the trustee." Mellon and the trustee have both submitted post-hearing memoranda of law to the court on Mellon's contention that the debtor had assigned the policies to Mellon. After careful consideration of the facts presented by the parties and the legal arguments submitted in support thereof, the court orders that the Motion for Relief from the Automatic Stay as to the cash surrender value of the life insurance policies is denied.

## I. FACTS

The debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on January 31, 1989. Prior to the commencement of the bankruptcy case the debtor entered into a Loan and Security Agreement (the "Agreement") with Mellon which permitted the debtor, subject to the terms of the Agreement, to borrow up to the sum of $2,000,000 on a revolving line of credit.

The Agreement defines "collateral" at page 1:

(b) "Collateral" means, collectively, all Borrower's present and future right, title and interest in and to the following property, whether now or hereafter existing or acquired and wherever located: (i) all inventory (including returned or repossessed goods), accounts, open accounts, general intangibles, documents, chattel paper, instruments, notes, drafts, letters or advices of credit, receivables, other amounts owing to Borrower, fixtures and equipment, whether or not they arise or are acquired in Borrower's ordinary course of business, including, without limitation, all such property described specifically or by type in the Commercial Finance Transaction Report, attached hereto as Exhibit A, as supplemented from time to time hereafter; (ii) all products and proceeds of the foregoing (including, without limitation, any and all insurance policies and proceeds); and (iii) all guaranties, claims, rights, remedies and privileges relating to any of the foregoing.

The Agreement further states that "[a]s security for the due and punctual payment and performance of the Debt in accordance with the terms thereof, Borrower hereby grants to and creates in favor of Bank a security interest in the Collateral." The Agreement does not define "security interest," but it does state, " 'prior security interest' means an enforceable, perfected security interest under the Uniform Commercial Code ("UCC") which is prior to all Liens, except Liens for taxes not yet due and payable to the extent given priority by statute."

On September 16, 1969, a whole life insurance policy was issued to the debtor by Inter–Ocean Insurance Company. This policy insured the life of Allen Tyson, who at the time was a major shareholder, a member of the Board of Directors and an officer of the debtor. The Inter–Ocean policy provided that "[n]o assignment hereof shall be binding upon Inter–Ocean unless and until it is filed with Inter–Ocean at its Executive Offices. Inter–Ocean shall not be held responsible for the validity of any such assignment."

Subsequent to executing the Agreement, neither the debtor nor Mellon notified Inter–Ocean or its successor, The Cincinnati Life Insurance Company, of Mellon's claim of a security interest in the policy or that an assignment of the policy had occurred. The debtor never delivered the actual Inter–Ocean policy to Mellon. The trustee discovered the policy among the records of the debtor at its corporate offices. The trustee later surrendered the policy to the Cincinnati Life Insurance Company and received payment of $1,866.92.

Although the cash surrender value ($1,866.92) of the Inter–Ocean policy was the only policy at issue in Mellon's Motion for Relief from the Automatic Stay, counsels' briefs allege that there are at least seven other life insurance policies owned by the debtor in which Mellon asserts rights as an assignee.

In 1968 and 1969, the debtor purchased four policies of whole life insurance insuring various shareholders, directors and officers. These policies were purchased from Louisiana and Southern Life Insurance Company, whose latest successor is Mutual Security Life Insurance Company. Mellon never notified the insurance carrier of any interest in these four policies nor did they take possession of the policies. The trustee discovered these four policies in the business office of the debtor.

The debtor also purchased three whole life insurance policies from John Hancock Mutual Life Insurance Company. Although the trustee could not find the policies themselves, the trustee has examined the debtor's business records and believes

the policies were purchased prior to June 22, 1984. There is nothing in the record to suggest that Mellon ever notified John Hancock of its claim to be an assignee of the policies or that the policies were delivered to Mellon.

In its supporting brief, Mellon states that it believes that the "Debtor owns two other life insurance policies which have cash surrender values of approximately $25,000.00 to $30,000.00 in the aggregate." Mellon's statement is assumed to refer to the various John Hancock and Louisiana and Southern Life policies.

The life insurance policies, which are a part of the record, are substantially alike in form. Therefore, the court is inclined to treat them as a whole and term them the "Policies."

## II.  ANALYSIS

Mellon commenced this motion on the theory that they possessed a valid perfected security interest in the Policies. At the hearing and in the post-hearing briefs, Mellon argued that although they do not have an Article IX security interest under the Uniform Commercial Code ("U.C.C."), the Agreement was an assignment of the Policies owned by the debtor to Mellon.

Mellon cites *In re Long Chevrolet, Inc.*, 79 B.R. 759 (N.D.Ill.1987), in support of this argument. In *Long*, a creditor claimed that it had a perfected security interest in certain funds of the debtor, which included, *inter alia*, the cash surrender value of a life insurance policy. The creditor and debtor in *Long* had executed a security agreement, the collateral of which included life insurance policies. The *Long* court, after holding that the U.C.C. did not apply to the transaction, found that the policies had been assigned to the creditor as a result of the security agreement. 79 B.R. at 767. The *Long* court considered the facts in light of "principles of general contract law" and concluded that the agreements manifested an intent to assign the debtor's interest in the life insurance policies to the creditor. 79 B.R. at 767. Mellon argues that this court should find, as did the *Long* court on similar facts, that

the debtor had the present intent to assign the policies to the creditor. We do not agree with Mellon's argument for the reasons set forth below.

■  The issues as to whether an assignment occurred and how this court will classify the right of any such assignment are areas governed by Pennsylvania law. In *Lyon v. Ty–Wood Corp.*, 212 Pa.Super. 69, 239 A.2d 819 (1968), the sole issue was whether a transaction between two parties constituted security interests under the U.C.C. or whether they were absolute assignments in payment of a pre-existing debt. In that *Lyon* case, the court initially looked to a comment to the U.C.C. which states "the principal test whether a transaction comes under this article is: Is the transaction intended to have effect as security?" 13 Pa. C.S.A. § 9102, comment p. 126. Specifically, "[i]n the instant case, then, we must examine the business activities, the objectives and the relationship of the parties to ascertain this intent and on that basis determine whether the transactions in question legally constitute an absolute assignment or a security interest." 239 A.2d at 821.

■  The transaction before the court in the instant case is one that has been alternatively termed a security interest and an assignment by one party, Mellon, and "similar to an unperfected U.C.C. Article 9 Security Interest" by the trustee. The relative rights of the parties are dependent on the court's classification of the transaction as creating either a security interest or an assignment, therefore the court must perform a *Lyon* analysis upon the instant facts to make such a determination. That analysis consists of examining the business activities, the objectives and the relationship of the parties as well as the Agreement and the Policies.

The debtor's relationship with Mellon began in the 1960's and saw several changes up to the last major restructuring, evidenced by the Agreement in 1985. The Agreement gave to the debtor a line of credit for which the debtor granted to Mellon "a security interest in the collateral."

Paragraph 2 at p. 2 of Agreement. The Agreement does not state that the policies are being assigned, either absolutely or conditionally to Mellon. The Agreement does not define "security interest," but the definition of a "prior security interest" as being an "enforceable perfected security interest under the U.C.C." leads the court to conclude that by the terms of the Agreement a "security interest" was intended to be a perfected security interest under the U.C.C. Thus, the terms of the Agreement lead this court to conclude that when the parties contracted to grant a security interest, they tended to grant a security interest under the U.C.C. which Mellon could perfect. We do not find that this language evinces a present intent of the debtor to assign the policies.

Given the business relationship between the parties the court is inclined to view the Agreement as its title suggests—a loan and security agreement. The court views the transaction as one whereby a security interest in collateral was granted to secure a loan. The evidence before the court lacks only indicia that the debtor intended to absolutely assign the Policies to Mellon. Such an action would have vested all rights to the Policies in Mellon at the time of the transaction and this interpretation does not seem consistent with the Agreement. Nor does the evidence indicate that the debtor was divested of all control over that which was allegedly assigned. In determining whether a transaction granted an assignment or a security interest, the court in *In re Armando Gerstel, Inc.*, 65 B.R. 602 (S.D.Fla.1986), found the existence of an assignment "when there is an intent to assign a present right in the subject matter of the assignment, divesting the assignor of all control over that which is assigned." *Id.* at 605; *Matter of Candy Lane Corp.*, 38 B.R. 571 (Bankr.S.D.N.Y.1984); *In re Moskowitz*, 14 B.R. 677 (Bankr.S.D.N.Y. 1981).

■ The trustee raises an interesting argument in his assertion that the delivery of a policy is required to create a valid enforceable security interest in an insurance policy. Generally in Pennsylvania, the de-livery of the policy to the assignee is necessary to the validity of the assignment of an insurance policy. *Phoenix Mutual Life Ins. Co. of Hartford v. Reich*, 75 F.Supp. 886, 895 (W.D.Pa.1948). Actual delivery is not always required when there are certain unusual circumstances, such as where documents clearly manifest an intent to assign. *Scott v. Dickson*, 108 Pa. 6 (1884). The court finds no such unusual circumstances in the case at bar. Absent such clearly established intent or other unusual circumstances, the debtor was required to deliver the policies to Mellon to effect an absolute assignment.

The fact that the Policies remained in the debtor's possession while they obtained loans from the insurers against the Policies, and that Mellon never reported an assignment to the various insurers in order to protect their "purported assignments" further supports the court's conclusion that the parties intended to create a security interest in the collateral and not an absolute assignment.

■ The court concludes that the Agreement intended to grant a security interest in collateral. The issue then becomes whether an Article IX security interest can be created in life insurance policies. This issue is clearly settled as a matter of Pennsylvania law. The Pennsylvania U.C.C. states "[t]his division does not apply: ... (7) to a transfer of an interest or claim in or under any policy of insurance, except as provided with respect to proceeds (section 9306) and priorities in proceeds (section 9312)...." 13 Pa.C.S.A. § 9104(7). In construing an identical passage, the Court of Appeals for the Second Circuit held that "it should be apparent that this exclusion applies only to situations where the parties to a security agreement attempt to create a direct security interest in an insurance policy by making the policy itself the immediate collateral securing the transaction." *PPG Industries, Inc. v. Hartford Fire Ins. Co.*, 531 F.2d 58 (2d Cir.1976). The U.S. District Court for the Eastern District of Pennsylvania looked to section 9–104(g) (section 9–104(g) of the U.C.C. is 13 Pa.C. S.A. § 9104(7)) and concluded that "[i]t is

quite clear, therefore, that § 9–104(g) was not intended to be a general prohibition against security interests in all types of insurance but only life insurance policies." *Ettinger v. Central Penn National Bank*, 2 B.R. 385 (E.D.Pa.1979), *rev'd, on other grounds*, 634 F.2d 120 (3d Cir.1980). An Article IX security interest cannot be created in life insurance policies as a matter of Pennsylvania law. Mellon and the debtor attempted to create such an interest, but the law excludes such a transaction from Article IX's coverage. This court will not recognize a security interest in the Policies. The Agreement fails to create one. This court finds the Agreement to be a failed attempt to create a security interest and not to be an assignment as Mellon has argued.

█ Assuming arguendo that the Agreement was an assignment of the Policies to Mellon, the court would view such an assignment as an equitable transfer of the right to receive the proceeds of the Policies, giving rise only to an equitable lien which would not extinguish the debtor's property rights in the Policies. *The Insurance Co. of Pennsylvania v. The Phoenix Insurance Co.*, 71 Pa. 31 (1872).

Pennsylvania distinguishes between equitable and legal assignments. A legal assignment is "a transfer or setting over of property or of some right, or interest therein, from one person to another, and unless in some way qualified, it is properly the transfer of one whole interest in an estate, chattel, or other thing." *Brager v. Blum*, 49 B.R. 626, 629 (E.D.Pa.1985). An equitable assignment, on the other hand, is "any order, writing, or act by the assignor which makes an absolute appropriation of a chose in action or fund to the use of the assignee with the intention to transfer a present interest, although not amounting to a legal assignment." *Id.* at 629. In *Clark v. Equitable Life Assur. Soc. of United States*, 133 F. 816 (C.C.E.D.Pa. 1904), the court opined the following:

> An assignment of an insurance policy as collateral security rests in the assignee a title to enable him to collect proceeds thereof, yet it does not divest the assign-

or of the general property in the policy, and, notwithstanding his assignment, the assignor has title to the property subject to the assignee's lien.

*Id.* at 818. The Pennsylvania Superior Court in *Sommer v. New England Mutual Life Insurance Co.*, 21 Pa.Super. 501 (1902), held that an assignment of a life insurance policy was "collateral security" and not an absolute assignment. They further held that the policy was merely to be held as security for the "amount of his [the assignee's] demands then subsisting." *Id.* at 503. "[A]n assignment for security differs from an absolute transfer." *Lemley v. McClure*, 122 Pa.Super. 225, 185 A. 878, 881. The court in *Duty v. First State Bank of Oregon*, 71 Or.App. 611, 693 P.2d 1308, ruled that "an assignment of an insurance policy as collateral security does not divest the insured or the beneficiary of their general interest in the policy, but merely creates a lien in favor of the assignee to the extent of the debt owed." 693 P.2d at 1313.

Thus, were the court inclined to find that the debtor has assigned the policies to Mellon, that assignment would be an equitable assignment which merely subjected the debtor's policies to an equitable lien.

█ Moreover, even if an equitable lien were created, it would nevertheless be subordinate to the subsequent legal lien of a judgment creditor. *In re O.P.M. Leasing Services, Inc.*, 23 B.R. 104 (Bankr.S.D.N.Y. 1982). Thus, such lien is invalid against the trustee who has the status of a hypothetical lien creditor. 11 U.S.C. § 544(a) (1988). The legislative history of the Bankruptcy Code makes clear that Article IX of the U.C.C. treats equitable liens as "unperfected security interests which the trustee can in any case set aside." H.R.Rep. No. 595, 95th Cong., 1st Sess. 209 (1977) U.S. Code Cong. & Admin.News 1978, pp. 5787, 2170.

In sum, this court views the Agreement as an attempt to create an Article IX U.C.C. security interest in the debtor's Policies. Because such an attempt is precluded by law, Mellon now asserts the Agreement to be an assignment. This court does not

find that the parties intended the Agreement to be an assignment. Assuming arguendo that they did intend an assignment, such an assignment is viewed within Pennsylvania law as an equitable assignment which creates an equitable lien. Such a lien is invalid against the trustee.

The court holds that no assignment of the Policies occurred and thus denies the Motion for Relief from the Automatic Stay as to the cash surrender value of the life insurance policies.